In re ELLS.

(District Court, D. Massachusetts.  January 19, 1900.)

No. 1,722.

BANKRUPTCY—PROVABLE DEBTS—LOSS OF RENT.

Where a bankrupt was tenant of property under a lease which gave the landlord the right to re-enter and resume possession if the lessee should be "declared bankrupt or insolvent according to law," and the lessee covenanted that in case of such a termination of the lease he would "indemnify the lessor against all loss of rent or other payments which he may incur by reason of such termination during the residue of the term," and the landlord re-entered upon the bankruptcy of the tenant, *held*, that he could not prove a claim against the estate of the tenant in bankruptcy for the difference between the present letting value of the premises for the remainder of the term and the stipulated rent for that period, there being no breach of the covenant of indemnity until after an actual loss of rent, and then only to the extent of such loss.

In Bankruptcy.  On review of decision of referee in bankruptcy.

Thomas Weston, for bankrupt.
Walter N. Buffum, for proving creditor.

LOWELL, District Judge.  The bankrupt was tenant of premises under a lease, of which one clause read as follows:

"Provided, also, and these presents are upon this condition, that if the lessee, or his executors, administrators, or assigns, do or shall neglect or fail to perform or observe any of the covenants contained in these presents, and on his or their part to be performed or observed, or if the estate hereby created shall be taken on execution or by other process of law, or if the lessee, or his executors, administrators, or assigns, shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of his or their property for the benefit of creditors, then and in any or the said cases (notwithstanding any license of any former breach of covenant, or waiver of the benefit hereof, or consent, in a former instance) the lessors, or their successors, heirs, or assigns, lawfully may, immediately or at any time thereafter, and without demand or notice, enter into and upon the said premises, or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the lessee and those claiming through or under him, and remove their effects (forcibly, if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid this lease shall determine; and the lessee covenants that in case of such termination he will indemnify the lessors, their successors, heirs, and assigns, against all loss of rent and other payments which they may incur by reason of such termination during the residue of the time first above specified for the duration of the said term."

The landlord seeks to prove against the estate for the difference between the present letting value of the premises for the residue of the original term and the rent for the same period fixed by the lease. It is nowhere expressly stated that the landlord entered under the clause above quoted, but it sufficiently appears.  To decide this case, it is necessary first to inquire (1) what, after the lessee's bankruptcy, but in the absence of the clause mentioned, would become of the estate created by the lease? and (2) what would be the rights of the landlord if he had entered under the clause mentioned for some cause other than bankruptcy, e. g. for failure to pay rent.

1. The law concerning the effect of bankruptcy upon a leasehold of the bankrupt is stated in Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725:

"The earlier law of England, which we have adopted in this country, was that the assignees of a bankrupt have reasonable time to elect whether they will assume a lease which they find in his possession; and, if they do not take it, the bankrupt retains the term on precisely the same footing as before, with the right to occupy, and the obligation to pay rent. If they do take it, he is released, as in all other cases of valid assignment, from all liability, excepting on his covenants; and from these he is not discharged in any event."

See, also, Hall, Landl. & T. 346.

I can find nothing in the act of 1898 to produce a result different from that of the act of 1867. Had there been no clause giving the lessor the right to re-enter, the trustee in bankruptcy would have had a reasonable time to elect whether to assume or to refuse the lease. If he had assumed it, the bankruptcy would have operated like any other assignment, and would have released the bankrupt from all liability, except upon those of his covenants not already broken which would have remained binding upon him after any other assignment. If the trustee had refused to take the lease, the bankrupt would have remained tenant as before. In Re Jefferson (D. C.) 93 Fed. 948, 951, the learned judge said:

"And yet the court sees no way to avoid the conclusion that the relation of landlord and tenant in all such cases ceases, and must, of necessity, cease, when the adjudication is made. If the relation does cease, the landlord afterwards has no tenant, and the tenant has no landlord. At the time of the adjudication the bankrupt is clearly absolved from all contractual relations with, and from all personal obligations to, the landlord growing out of the lease, subject to the remote possibility that his discharge may be refused,—a chance not worth considering. After the adjudication there is no obligation on the part of the tenant growing out of the lease. He not only owes no subsequent duty, but any attempt on his part to exercise any of the rights of a tenant would make him a trespasser. His relations to the premises and to the contract are thenceforth the same as those of any other stranger. He cannot use nor occupy the premises. No obligation on his part to pay rent can arise when he can neither use nor occupy the property. The one follows the other, and it seems clear that no provable debt, and, indeed, no debt of any sort against the bankrupt, can arise for future rent. No rent can accrue after the adjudication in such a way as to make it the debt of the bankrupt, and future rent had not, in any just sense, accrued before the adjudication."

With all respect for the learned judge, I must think the above remarks made somewhat hastily, unless they are to be taken as limited to the particular lease in question, or made to depend upon some peculiar provision of the statutes of Kentucky. Let us consider an actual example. A lease recently examined was made for a term of several hundred years, upon a payment of $16,000 at the beginning of the term, and subject to a future rent of $1 a year if demanded by the lessor. Clearly, this would be an asset of a bankrupt's estate which the trustee would almost certainly elect to assume, and I can find nothing in the bankrupt act which would terminate the lease and entitle the landlord to possession. Many existing ground leases, also, would certainly be assumed by a trustee in bankruptcy of the lessee, and it would be unjust to hold them terminated by the adjudication. It follows, then, that the lease here in question was not determined by

the bankruptcy of the lessee, but only by the re-entry of the lessor. Savory v. Stocking, 4 Cush. 607; Treadwell v. Marden, 123 Mass. 390.

2. What, then, would be the remedy of the landlord against the former tenant immediately after re-entry under the clause mentioned, had there been no bankruptcy of the tenant? Could the landlord have recovered at once the difference between the present letting value and the rent for the residue of the original term? I think not. The contract was one of indemnity for loss of rent and other payments, and would be broken only after, and so far as, rent had been lost and payments had been made. Doubtless, the covenant might have been expressed otherwise. If the debtor in this case had made a contract to take a lease at a fixed rent, and had broken the contract by refusing to execute the lease, damages for the entire breach could have been recovered at once, and might perhaps have been estimated at the difference between the rent stipulated in the contract and the rental value of the premises. A covenant in a lease might be worded expressly to require the lessee, in case of re-entry, to pay at once damages calculated upon this basis. But the contract or covenant supposed is not the covenant in this case. The contracts sued upon in the cases cited in argument by counsel for the creditor—contracts to take water for a specified time, to employ the plaintiff, to furnish board or support, etc.—were not contracts of indemnity. Immediately after re-entry the lessor in this case, even if unhampered by bankruptcy, could not have brought suit on this covenant against the lessee to recover the damages for which he seeks to prove against the lessee's estate in bankruptcy.

At the time of adjudication the claim in this case was contingent—First, upon the determination of the lease by the lessor for breach of the covenant; and, second, upon a subsequent loss of rent by the lessor. If the lessor permitted the lease to continue, or if the rent subsequently obtained by him equaled or exceeded that provided in the lease, the claim would not arise. It is argued, however, that contingent claims are provable under the act of 1898. See Lowell, Bankr. p. 485. The provisions of the act of 1898 concerning the proof and allowance of contingent claims differ materially from those contained in the acts of 1841 and 1867. Section 63a (1) of the present act provides for the proof of fixed liabilities absolutely owing at the time of filing the petition, but not then payable. Section 57i provides for the proof of the contingent claim of a surety of the bankrupt. General Order 21, par. 4 (32 C. C. A. xxii., 89 Fed. ix.), deals only with the claims of sureties. Apart from those provisions, there is nothing in the act of 1898 or in the general orders which refers expressly to contingent claims, and nothing which corresponds to the sweeping provisions of section 5 of the act of 1841, and section 19 of the act of 1867. To determine this case it is not necessary, however, to decide that the act of 1898 permits proof of no contingent claims except those specified in section 63a (1) and section 57i. Even under the broad provisions of the act of 1867 above referred to, it was held that a provision in a lease that the lessors might re-enter and relet the premises at the risk of the lessees, who should remain liable for the rent, and be credited with the sums actually realized, did not give rise

to a provable contingent claim. Ex parte Lake, 2 Low. 544, Fed. Cas. No. 7,991. The provision above quoted of the lease here in question, though not identical with that in Ex parte Lake, yet resembles it so closely as to be essentially similar. If the contingent claim arising in Ex parte Lake could not be proved under the act of 1867, it is clear that the contingent claim arising in this case cannot be proved under the act of 1898. The judgment of the referee is affirmed.