In re ROTH & APPEL.

(Circuit Court of Appeals, Second Circuit. August 2, 1910.)

No. 246.

1. BANKRUPTCY (§ 318*)—PROVABLE DEBTS—RENT ACCRUING AFTER BANKRUPTCY—"FIXED LIABILITY."

The consideration for rent is the use of the land, and a covenant to pay rent creates no debt until the time stipulated for the payment arrives, and therefore rent accruing under a lease after the filing of a petition in bankruptcy against the lessee is not provable against his estate as "a 'fixed liability' * * * absolutely owing at the time of the filing of the petition," within the meaning of Bankruptcy Act July 1, 1898, c. 541, § 63a (1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447); both its existence and amount being at that time contingent upon uncertain events.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

2. BANKRUPTCY (§ 255*)—EFFECT ON LEASE—FUTURE INSTALLMENTS OF RENT.

The bankruptcy of a lessee does not sever the relation of landlord and tenant, and the tenant's obligation to pay rent under his lease is not discharged as to the future, unless the trustee elects to retain the lease as an asset.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 255.*]

3. BANKRUPTCY (§ 318*) — PROVABLE DEBTS — COVENANT FOR INDEMNITY AGAINST LOSS OF RENT.

A provision in a lease that in case the lessees should be declared bankrupt the lease should terminate, and the lessor should have the right to re-enter, and that in such case the lessees should indemnify the lessor

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for any loss of rents during the remainder of the term, paying the same monthly as upon rent days, does not create "a fixed liability * * * absolutely owing at the time of the filing of the petition" against the lessees, within the meaning of Bankruptcy Act July 1, 1898, c. 541, § 63a (1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), which can be proved as a claim against their estate; but the liability is altogether contingent, because of the uncertainty as to whether the lessor will re-enter and terminate the lease, and, if he does, whether there will be any loss, and its amount; nor is such claim provable as "a debt founded upon an express contract," under section 63a (4), which must be read in connection with, and as limited by, subdivision 1, and cannot be construed as permitting the proof of claims which are contingent both as to liability and amount at the time of the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

**4. LANDLORD AND TENANT (§ 181*)—"RENT."**

"Rent" is a sum stipulated to be paid for the use and enjoyment of land.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 730; Dec. Dig. § 181.*

For other definitions, see Words and Phrases, vol. 7, pp. 6087–6091.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Roth & Appel, bankrupts. From an order of the District Court (174 Fed. 64) expunging a claim, Adolph Boskowitz appeals. Affirmed.

On August 14, 1907, Adolph Boskowitz, the appellant, entered into an indenture of lease with the firm of Roth & Appel, the present bankrupts, wherein he let to them certain premises in the city of New York for the term of five years from February 1, 1908, at the annual rental of $3,000, payable quarterly in advance. The lease contained the following provision:

"In case the lessee is declared bankrupt, the lease shall terminate and the lessor has a right to re-enter, in which case the lessee agrees, as a part consideration hereof, that it, and its legal representatives, will pay to the lessor and his legal representatives on the first day of each month, as upon rent days, the difference between the rents and sums reserved and agreed to be paid by the lessee and those otherwise reserved or with due diligence collectible, on account of rents of the demised premises for the preceding month, up to the end of the term remaining at the time of the entry. Such re-entry shall not prejudice the right of the lessor to recover for rent accrued or due at the time of such re-entry."

On January 20, 1908, a petition in involuntary bankruptcy was filed against said Roth & Appel, and on May 27, 1908, they were adjudicated bankrupts. On April 29, 1908, prior to the adjudication, the appellant relet the premises for the remainder of the term to another tenant, who entered into possession on July 1, 1908. The rental under the new lease was at the rate of $175 per month from July 1, 1908, to February 1, 1909, and at the rate of $250 per month thereafter. On July 14, 1908, the appellant filed his claim made up in substance of the following items:

| | |
|---|---|
| (1) Full rent from February, 1908, to July, 1908 | $1,250 |
| (2) Difference between rent reserved and rent stipulated in new lease from July, 1908, to February, 1909 | 525 |
| | $1,775 |

The trustee moved to expunge the claim upon the ground that it was not provable in bankruptcy. The referee expunged from the claim so much as embraced the difference in rents arising subsequent to the time of filing the claim, and allowed the balance. The trustee and the appellant both filed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

petitions to review the referee's order and the District Court expunged the entire claim. The opinion of the District Judge is printed in 174 Fed. 64.

Levy & Rosenthal and C. J. Hermann (Gerald B. Rosenheim, of counsel), for appellant.

James, Schell & Elkus (R. P. Levis and James N. Rosenberg, of counsel), for appellee.

A. Leo Everett, amicus curiæ.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lesssee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of debitum in præsenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent. Watson v. Merrill, 136 Fed. 362, 69 C. C. A. 185, 69 L. R. A. 719. See, also, Coke on Littleton, 292b; Wood v. Partridge, 11 Mass. 492; Bordman v. Osborn, 23 Pick. (Mass.) 299.

It follows from these principles that rent accruing after the filing of a petition in bankruptcy against the lessee is not provable against his bankrupt estate as "a fixed liability * * * absolutely owing at the time of the filing of the petition," within the meaning of section 63a (1) of the bankruptcy act of 1898.[1] It is not a fixed liability, but is contingent in its nature. It is not absolutely owing at the time of the bankruptcy, but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events. Watson v. Merrill, supra; Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118. Also In re Rubel (D. C.) 166 Fed. 131; In re Mahler (D. C.) 105 Fed. 428; In re Hayes, etc., Co. (D. C.) 117 Fed. 879; In re Arn-

---

[1] The relevant portions of section 63 of the bankruptcy act follow:

"Sec. 63. Debts Which may be Proved.—(a) Debts of the bankrupt which may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; * * * (4) founded upon an open account or upon a contract express or implied. * * *

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

Act July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447).

stein (D. C.) 101 Fed. 706; In re Jefferson (D. C.) 93 Fed. 948; In re Inman & Co. (D. C.) 171 Fed. 185.

Even under the bankruptcy acts of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440) and 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), which, unlike the present act, expressly permitted the proof of contingent demands, claims for unaccrued rent were not provable. Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725, In re May, 9 N. B. R. 419, Fed. Cas. No. 9,325, and Bailey v. Loeb, 11 N. B. R. 271, Fed. Cas. No. 739, were cases under the act of 1867. Bosler v. Kuhn, 8 Watts & S. (Pa.) 183, was under the act of 1841.

The authorities are not entirely in accord upon the question whether a lease, containing the usual provisions, is terminated by bankruptcy. In some cases it has been held that bankruptcy destroys the relation of landlord and tenant and practically annuls the lease. In re Jefferson, supra; In re Hayes, etc., Co., supra. See, also, Bray v. Cobb (D. C.) 100 Fed. 270, reversed in Cobb v. Overman, 109 Fed. 65, 48 C. C. A. 223, 54 L. R. A. 369. In other cases it is held that bankruptcy does not sever such relation, that the tenant remains liable, and that the obligation to pay rent is not discharged as to the future, unless the trustee elect to retain the lease as an asset. Watson v. Merrill, supra; In re Hinckel Brewing Co. (D. C.) 123 Fed. 942. See, also, In re Ells (D. C.) 98 Fed. 968.

In our opinion the latter view is the correct one. We think the early law, as stated in Ex parte Houghton, supra, is the law under the present bankruptcy statute, applicable in the case of leases having the usual covenants and conditions. In that case the court said:

"The earlier law of England, which we have adopted in this country, was that the assignees of a bankrupt have a reasonable time to elect whether they will assume a lease which they find in his possession; and, if they do not take it, the bankrupt retains the term on precisely the same footing as before, with the right to occupy, and the obligation to pay rent. If they do take it, he is released, as in all other cases of valid assignment, from all liability, excepting on his covenants; and from these he is not discharged in any event."

This reasoning leads by another course to the same conclusion already reached. If the lessee remain liable upon the lease after his bankruptcy in cases where it is not assumed by the trustee, it necessarily follows that his estate is not liable thereon. With a few exceptions, not applicable here, that which is not dischargeable in bankruptcy is not provable in bankruptcy.

The claim in this case was regarded in the report of the referee as a demand for installments of rent falling due according to the terms of the lease subsequent to the time of filing the petition in bankruptcy, and the question considered in such report was whether demands of that character are provable in bankruptcy. So the claim was assumed to be of that character by the District Judge, and was ordered expunged upon that assumption. Regarding, then, the claim as one for unaccrued rent, it is clear, upon the principles already examined, that it was not provable against the bankrupt estate under the first clause of section 63a of the bankruptcy act.

But, while there may be a question whether the demand as covering the period prior to the re-entry by the lessor might not be considered a claim for rent as such, it is clear that the demand for the difference between the rent reserved and the rent stipulated in the new lease is not such a demand, but is based upon the indemnity provision in the lease shown in the foregoing statement of facts.

The lease in the present case is not a lease containing the usual covenants and conditions. It contains unusual provisions. As we have seen, it expressly provides that in case the lessee is declared bankrupt the lease shall terminate and the lessor shall have the right to re-enter. Under such a lease as this the trustee could not adopt the lease against the lessor's objection. The lessor had the right to terminate it, and did terminate it, by re-entry. And when he terminated it the obligation of the bankrupts as lessees terminated. The question in this case—at least with respect to a large part of the claim—is not, in its essence, whether rent to accrue in the future is provable against a bankrupt estate, but whether a claim founded upon an agreement to indemnify a landlord for loss of rents following bankruptcy is provable.

Undoubtedly the parties to a lease may agree that bankruptcy shall terminate it, and that, upon such termination, all future installments of rent shall at once become due and payable. In such a case, the installments may be regarded as consolidated by the contract, or, perhaps, as falling due by way of penalty. Not improbably claims based upon such leases are provable in bankruptcy. Thus in the case of In re Pittsburg Drug Co. (D. C.) 164 Fed. 482, where a lease provided that, on default in the payment of any rent, the rent for the entire term should at once become due and payable, it was held that, on the bankruptcy of the lessee while in default, the entire rent was "a fixed liability absolutely owing," and provable against the bankrupt estate. But the covenant of indemnity in the present lease was of a very different nature. It called for the payment of no fixed and certain sum. Its purpose was merely to guarantee against possible loss.

The inquiry, then, is as to the status of the lessor's demand upon this indemnity covenant at the time when the petition in bankruptcy was filed; for it is held that that is the time when the provability of claims against the estate of a bankrupt is fixed. Thus in the case of In re Pettingill (D. C.) 137 Fed. 145, it was said:

"Under that act the provability of a claim depends upon its status at the time the petition is filed. If, at that time, the claim is provable, within the definition of section 63, it may be proved. If, at that time, it does not fall within that definition, but does so at some later time, it cannot be proved."

See, also, Swarts v. Fourth National Bank, 117 Fed. 5, 54 C. C. A. 387; In re Bingham (D. C.) 94 Fed. 796; Watson v. Merrill, supra; In re Adams (D. C.) 130 Fed. 381; In re Swift, 112 Fed. 320, 50 C. C. A. 264.

Now, when the petition was filed, the first step toward declaring the lessee bankrupt was taken. It was not certain that bankruptcy would follow; but, if it did follow, the lessor would have the right to re-enter and terminate the lease. Notwithstanding the provision that the lease should terminate in case the lessees should be declared bankrupt, and

the lessor should have the right to re-enter, the lease was undoubtedly terminable by the re-entry, and not by the bankruptcy. In re Ells (D. C.) 98 Fed. 967. But the lessor was not obliged to re-enter, and whether he would do so or not was manifestly dependent upon uncertainties. Indeed, looking at the claim as it existed either at the time of the petition or the adjudication, it was altogether contingent in its nature:

(1) It was uncertain, as just pointed out, whether the lessor would re-enter and terminate the lease.

(2) In case the lease was terminated, it was uncertain whether there would be any loss in rents. If the rent received by the landlord from the new tenant equaled or exceeded that stipulated in the lease, there would be no loss, and, consequently, no foundation for any claim upon the indemnity covenant.

The case of In re Ells (D. C.) 98 Fed. 967, already referred to, is in point. In that case the lease contained a provision that the landlord might re-enter and resume possession if the bankrupt should be "declared bankrupt or insolvent according to law," and the lessee covenanted that in case of such termination of the lease he would "indemnify the lessor against all loss of rent or other payments which he may incur by reason of such termination during the remainder of the term," and the landlord re-entered upon the bankruptcy of the tenant. It was held that the claim of the landlord for the difference between the present letting value of the premises and the rent reserved for the remainder of the term could not be proved against the bankrupt estate of the lessee. Judge Lowell said (page 968):

"The contract was one of indemnity for loss of rent and other payments, and would be broken only after, and so far as, rent had been lost and payments had been made. * * * At the time of the adjudication the claim in this case was contingent, first, upon the determination of the lease by the lessor for breach of the covenant; and, second, upon a subsequent loss of rent by the lessor. If the lessor permitted the lease to continue, or if the rent subsequently obtained by him equalled or exceeded that provided in the lease, the claim would not arise. * * * The provisions of the act of 1898 concerning the proof and allowance of contingent claims differ materially from those contained in the acts of 1841 and 1867. * * * Even under the broad provisions of the act of 1867 above referred to, it was held that a provision in a lease that the lessors might re-enter and relet the premises at the risk of the lessees, who should remain liable for the rent, and be credited with the sums actually realized, did not give rise to a provable contingent claim. Ex parte Lake, 2 Low. 544, Fed. Cas. No. 7,991. The provision above quoted of the lease here in question, though not identical with that in Ex parte Lake, yet resembles it so closely as to be essentially similar. If the contingent claim arising in Ex parte Lake could not be proved under the act of 1867, it is clear that the contingent claim arising in this case cannot be proved under the act of 1898."

See, also, In re Shaffer (D. C.) 124 Fed. 111.

For these reasons, we are satisfied that the claim in question as based upon the indemnity covenant is contingent, and not provable against the bankrupt estate under the first clause of section 63a of the bankruptcy act.

But this does not dispose of all of the appellant's contentions. It is urged, in effect, that the claim, whether regarded as a demand for rent or as based upon the indemnity provision, is "a debt founded upon

an express contract," and provable under the fourth clause of section 63a, irrespective of the question whether it is of such character as to be provable under the first clause.

The principal cases cited in support of this contention are In re Smith (D. C.) 146 Fed. 923, and Moch v. Market St. Nat. Bank, 107 Fed. 897, 47 C. C. A. 49, which hold that the liability of a bankrupt indorser of commercial paper, which does not become absolute until after the filing of the petition, is a debt founded upon contract within section 63a (4), and provable against the bankrupt estate after it becomes fixed within the time allowed for proving claims.

It is not necessary for the purposes of the present case that we should go so far as to dispute the conclusions reached in these decisions. While a contract of indorsement is contingent, the extent of the liability is at all times ascertainable, and it might be that such a contract would be provable without it following that an indemnity contract covering possible loss of rents—both the existence and extent of the liability upon which are uncertain and contingent—would be provable.

The present bankruptcy statute, unlike—as we have seen—the acts of 1841 and 1867, does not provide for the proof of contingent claims. Taking the fourth subdivision of section 63a as being independent of the first subdivision, still there is nothing to indicate that it was intended to embrace wholly contingent demands. Indeed, it is only by reading section 63b—which permits the liquidation of unliquidated demands—in connection with said fourth clause of 63a, that any ground is shown for contending that a claim like the one in question can be proved. But this construction expands the provisions of section 63a by those of 63b, and it is well settled that such a construction cannot be adopted. Section 63b adds nothing to the class of debts provided under 63a. It merely permits the liquidation of an unliquidated claim provable under the latter provision. In Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084, the Supreme Court of the United States said:

"Section 63a provides for debts which may be proved, which, among others. are: (1) 'A fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest on such as were not then payable and did not bear interest'; (4) 'founded upon an open account, or upon a contract express or implied.' In section 63b provision is made for unliquidated claims against the bankrupt, which may be liquidated upon application to the court in such manner as it shall direct, and may thereafter be proved and allowed against his estate. This paragraph 'b,' however, adds nothing to the class of debts which might be proved under paragraph 'a' of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court should direct. We do not think that by the use of the language in section 63a it was intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove."

In Dunbar v. Dunbar, supra, the case of Moch v. Market St. Nat. Bank, supra, was distinguished.

But, while it is not necessary, in order to reach a decision in this case, to determine whether 63a (4) is subject to the limitation con-

tained in 63a (1)—that debts to be provable must be absolutely owing at the time of filing the petition—we think it the better view that it is so limited. If it is not so limited, the limitations in the first subdivision are practically of no effect. All claims upon instruments in writing not provable under the first clause, because not absolutely owing at the time of the petition, might be proved as claims founded upon a "contract express or implied" under the fourth clause, if no limitations are attached to the latter. We cannot regard this interpretation as tenable. We think that the different clauses of 63a should not be considered as independent, but should be read together, and that the said limitation in the first clause should be considered as repeated in the fourth clause. This interpretation of the section is supported by authority. Thus in Re Swift, 112 Fed. 316, 50 C. C. A. 270, already referred to, the Circuit Court of Appeals for the First Circuit said:

"That part of the present bankruptcy act which describes what debts may be proved does not repeat at all points the words 'owing at the time of the filing of the petition,' but it is impossible to consider it other than as though it did thus repeat them."

And in Re Adams (D. C.) 130 Fed. 381, the court said:

"But a creditor cannot prove for an indebtedness arising between the filing of the involuntary petition and adjudication. This appears from the analogy of section 63a (1), (2), (3), and (5), as applied to the interpretation of clause (4). In clauses (1) and (4), for example, the limit of time must be the same, inasmuch as clause (4) includes clause (1), and, if clause (4) were less limited in point of time, the limit imposed upon clause (1) would become nugatory."

For these reasons, we think that the claim of the appellant, whether regarded as one for unaccrued rent or for indemnity for loss of rent, was not provable against the bankrupt estate under either section 63a (1) or 63a (4), and was properly expunged by the District Court.

The order of the District Court is affirmed, with costs.