## In re CUSHMAN.

(District Court, S. D. New York. July, 1924.)

1. **Bankruptcy ⬤=31—Debt may not be expunged from bankrupt's schedules.**

A referee is without power to expunge a debt from the bankrupt's schedules.

2. **Bankruptcy ⬤=314(2)—Rent accruing under lease subsequent to bankruptcy not a provable debt.**

Rent which may accrue under the terms of a lease for the unexpired term subsequent to

3 F.(2d)—29

bankruptcy of the lessee is not a debt provable against his estate.

In Bankruptcy. In the matter of Arthur E. Cushman, bankrupt. On review of order of referee. Affirmed.

O'Brien, Malevinsky & Driscoll, of New York City (Richard J. Mackey and Joseph Walker Magrauth, both of New York City, of counsel), for bankrupt.

Ernst, Fox & Cane, of New York City (Melville H. Cane and Alfred G. Steiner, both of New York City, of counsel), for creditor.

GODDARD, District Judge. On November 13, 1919, the Michael E. Paterno Realty Company, a creditor, entered into a lease with the bankrupt, wherein the bankrupt leased from the Paterno Company an apartment on the twelfth floor in the apartment house at No. 895 West End avenue, New York City, for a period of 9 years 10½ months, commencing November 15, 1919, and expiring September 30, 1929, at an annual rental of $4,000, payable in monthly installments in advance of $333.33. The bankrupt entered into possession and remained in possession until about April 15, 1923. On March 9, 1923, he filed a petition in bankruptcy and was adjudicated a bankrupt on March 26, 1923. The lease contained the following clause:

"First. The tenant hereby agrees to pay the rent as above stipulated without any deduction, fraud or delay and the tenant also agrees that if said rent is not paid at the time and in the manner provided, or if default shall be made in any covenant or agreement herein contained, or if the said premises or any part thereof shall become vacant during the term hereby demised, or if this lease is terminated by the landlord as provided in article 15 hereof, the landlord may resume possession of said premises by summary proceedings to dispossess or otherwise, without notice to the tenant, which notice is hereby expressly waived. And in the event of the landlord so resuming possession an amount equal to the whole of the term as herein originally demised shall thereupon become immediately due and payable by the tenant to the landlord and the tenant hereby expressly agrees that he will forthwith pay the same to the landlord and that he will also forthwith pay to the landlord any damage and expense which it may suffer in resuming possession and reletting said premises, including the cost of redecorating said premises and putting the

same in rentable condition, the cost of advertising and a reasonable commission for reletting, and the landlord agrees that if it thereafter relets said premises, which in its option it is hereby expressly authorized to do either by written lease or otherwise, and the tenant has made the payments as in this article provided, the landlord will pay to the tenant on the last day of each month during the balance of the term herein originally demised the net amount received by said landlord during said month upon such reletting."

At the time the petition was filed, the March rent was unpaid, so that the unexpired period of the lease, including the month of March, 1923, was six years and seven months, and the rent specified for this entire period would have totaled $26,333.-33; this was the amount which the bankrupt has scheduled as his indebtedness to the landlord creditor.

The landlord's contention is that the only indebtedness at the time of the filing of the petition was the unpaid installment of the March rent amounting to $333.33, and it asks to have the item of $26,333.33 "expunged" from the schedules and to insert in lieu thereof the said amount of $333.33.

[1] It is the duty of the referee to examine lists of creditors and schedules of property and to require such as are incomplete or defective to be amended, but the referee has no power to expunge a debt from the schedules.

"The schedules are the bankrupt's statement under oath of his debts and assets; they do not affect the rights of third parties in the assets or liabilities, nor are third parties bound thereby; a striking out of these items interferes with the bankrupt's duty. The right of the referee should be confined to requiring the bankrupt to make the allegations more definite and certain— not to require him to strike out the name of a creditor whom he says, under oath, is a creditor, nor to eliminate an item of property which he swears he considers to be property of the estate." Remington on Bankruptcy (3d Ed.) vol. 2, note to section 599.

That a debt may not be expunged from the schedules has been conclusively determined by the Circuit Court of Appeals for this circuit. In re Bernard (C. C. A. 2d Cir.) 280 F. 715, 48 Am. Bankr. Rep. 359, in a per curiam opinion, the court said as follows:

"To expunge a debt or the statement of a debt from a bankrupt's schedules, and to enjoin him from applying for a discharge in respect of such debt, is a novel procedure, for which no authority has been produced. It is opposed to the theory of the Bankruptcy Act. The lower court evidently thought the debt not dischargeable, and for this reason entered the order above recited. But it is the duty of a bankrupt (section 7[8], being Comp. St. § 9591) to file schedules containing 'a list of his creditors,' and one to whom he owes an undischargeable debt is as much a creditor as is one whose claim may be discharged under the act.

"A bankrupt is lawfully entitled to apply for a discharge under section 14 (Comp. St. § 9598), and by section 17 (Comp. St. § 9601) such discharge shall release him 'from all of his provable debts' with the exceptions there enumerated; and the prescribed form of discharge (No. 59) merely orders that the bankrupt 'be discharged from all debts and claims which are made provable by said acts against his estate,' etc. To strike out from a schedule what the bankrupt swears is a debt is a power nowhere given to the District Court, and by anticipatory order to prevent application for discharge in respect thereof is (1) an implied departure from the statutory procedure which contemplates a discharge in the form laid down by the Supreme Court; and (2) an assumption of power to declare what shall be the effect of a discharge which as pointed out in Re Havens (C. C. A. [2d Cir.]) [46 Am. B. R. 711], 272 F. 975, is a function of the court in which any given claim or debt or demand is advanced, and not of the bankruptcy court. The latter tribunal issues the discharge; the effect thereof is to be passed upon in the court in which it may be pleaded.

"Thus the major and more important portions of the order complained of are erroneous and must be reversed. As to the stay or the lifting thereof, that under section 11 (and see Collier on section 11a) is largely discretionary. Proceedings on a plainly nondischargeable debt cannot be stayed; yet, where the question is debatable, a stay may be granted until the bankrupt shall have had a reasonable time within which to procure that discharge, which he must have in order to present to the proper tribunal the status of the debt in suit.

"It is therefore directed that the order appealed from be reversed, with costs, without prejudice to any further proceedings in the court below in respect of a stay under section 11."

The fact that a bankrupt schedules a debt which is not dischargeable in bankruptcy does not change the law or relieve him of the obligation after his discharge. The bankruptcy law only provides that a discharge shall free the bankrupt from provable debts with certain exceptions, which do not include the debt in question. Section 17 of the Bankruptcy Act (Comp. St. § 9601).

In the case of 884 West End Avenue Corporation v. Pearlman, 234 N. Y. 589, 138 N. E. 458, the New York Court of Appeals held a clause similar to the said clause 1, supra, wherein it was provided that in the event of default in the payment of rent, the total amount for the balance of the entire term becomes due, to be void and unenforceable on the ground that "it amounted to a forfeiture or penalty and was illegal."

[2] There was no bankruptcy clause in this lease and the question is—whether under this lease rent, which may accrue subsequent to the filing of the petition in bankruptcy, is provable against the bankrupt's estate. The weight of the authorities is that it is not provable.

"Even the discharge fails to relieve him from claims against him that are not provable in bankruptcy, and, since his obligation to pay rents which are to accrue after the filing of the petition in bankruptcy may not be the basis of a provable claim, his liability for them is neither released nor affected by his adjudication in bankruptcy, or by his discharge from his provable debts." Watson v. Merrill (C. C. A. 8th Cir.) 136 F. 363, 69 C. C. A. 185, 14 Am. Bankr. Rep. 453, 69 L. R. A. 719.

"There was nothing due and owing when the petition was filed. There might or might not be such a debt in the future, depending upon various contingencies, but it is enough that there was no provable debt when the petition was filed." In re Jorolemon-Oliver Co. (C. C. A. 2d Cir.) 213 F. 625, 626, 130 C. C. A. 217, 32 Am. Bankr. Rep. 467.

See, also, Atkins v. Wilcox (C. C. A. 5th Cir.) 105 F. 595, 598, 44 C. C. A. 626, 53 L. R. A. 118, 5 Am. Bankr. Rep. 313; Matter of Roth & Appel (C. C. A. 2d Cir.) 181 F. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270, 24 Am. Bankr. Rep. 588; Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664, 29 Am. Bankr. Rep. 493.

Judge Hough, speaking for the Circuit Court of Appeals of this circuit, in Matter of Havens (C. C. A. 2d Cir.) 272 F. 975, 976, 46 Am. Bankr. Rep. 711, said:

"* * * And it has been too often said to need citation that, while the granting of a discharge is a function of the bankruptcy court alone, the effect thereof is for any court in which it is duly pleaded or otherwise submitted for judgment."

In my opinion, the referee was right in refusing to expunge the debt of $26,333.33 from the schedules. But the only claim that is provable against the bankrupt estate is $333.33, the rent for the month of March, 1923, and therefore all that is dischargeable, and order may be entered accordingly.