MANHATTAN PROPERTIES, Inc., v.
IRVING TRUST CO.

In re OLIVER A. OLSON CO., Inc.

No. 465.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

L. HAND, Circuit Judge, dissenting in part.

Arnstein & Levy, of New York City, for claimant.

Morris J. Bricker, of New York City, for appellant.

Harold L. Fierman, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case involves the validity of a claim in bankruptcy by a lessor against a bankrupt estate for rent due after petition filed. The referee and judge expunged the claim and the lessor appealed. The bankrupt, a corporation, had leased from the creditor premises in New York in which its business was carried on. The lease provided that upon default in any covenant, including the payment of rent, the lessor might re-enter and repossess himself of the premises, in which case the lessee promised "to pay each month to the Landlord the deficit accruing from the difference between the amount to be paid as rent as herein reserved and the amount of rent which shall be collected and received from the demised premises for such month during the residue of the term herein provided for after the taking possession by the Landlord." Upon the bankruptcy, one of the conditions of re-entry, the lessor re-entered and filed a claim for the difference between the aggregate installments of future rent and the present value of the balance of the term. The claim was expunged on the authority of our decision in Re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270, which the appeal is an effort to induce us to overrule.

The Bankruptcy Act of 1841 (5 Stat. 440, 444) allowed proof of contingent claims, section 5, and in Bosler v. Kuhn, 8 Watts & S. (Pa.) 183, the question came up of whether future installments of a ground-rent were provable. The Supreme Court of Pennsylvania held that they were not, since the land was the debtor, and the liability could not be regarded as an annuity, which was one of the claims expressly provided for by the act. In Savory v. Stocking, 4 Cush. (Mass.) 607, the claim was not allowed because future rent was not a debt in existence upon petition filed. In both cases apparently there had been no covenant to pay rent. The Act of 1867 (14 Stat. 517) also provided for contingent claims, but expressly dealt with rent, Rev. St. § 5071, and this, coupled with Rev. St. § 5072, was held to bar future rents in Bailey v. Loeb, Fed. Cas. No. 739, 11 N. B. R. 271, and In re May, Fed. Cas. No. 9,325, 9 N. B. R. 419. Independently of these sections (section 19 of the Act), Judge Lowell held in Ex parte Houghton, Fed. Cas. No. 6,725, 1 Lowell, 554, that future rent was not provable, because it was not a present debt, though the lease contained a covenant to pay

it. This he followed in Ex parte Lake, Fed. Cas. No. 7,991, 2 Lowell, 544, in a case where the lessee had in addition covenanted to indemnify the lessor seriatim in case of re-entry for breach of condition. Ex parte Houghton may be explained on the theory that rent ceased on re-entry—the lessor having re-entered—but Ex parte Lake must stand for a ruling that future rents are not provable, though the reason is not clear, except perhaps on historical grounds. When the situation came before us in Re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270, under a lease like that at bar, we disallowed the claim. The ground for our action was that section 63a (4), 11 USCA § 103 (a) (4), incorporated the phrase, "absolutely owing," of section 63a (1), 11 USCA § 103 (a) (1), and that the claim was contingent because, upon petition filed, it was uncertain whether the lessor would re-enter at all, and again, whether if he did, there would be any loss, and, if so, how much. Our interpretation of section 63 (a) (4) has now been expressly overruled in Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028, and our decision must rest upon the ground that, though the contingency of the claim is no objection to its proof, it is practically too uncertain to be liquidated. That had been held, for instance, in Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232, under the Act of 1867, and, in, Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084, under that of 1898. In Wolf v. Stix, 99 U. S. 1, 25 L. Ed. 309, the amount was fixed and the uncertainty of the incidence was not thought too great; In Maynard v. Elliott, both were held certain enough. Obviously, in these respects each case must stand by itself.

The law, as we now understand it, is therefore that a contingent claim may in general be proved, provided its liquidation does not involve too speculative considerations, confessedly a variable standard. Among these will be the ability of the claimant himself to control the contingency. Moreover, the whole subject has taken on a new aspect from Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, where bankruptcy was held to be the anticipatory breach of a contract to pay annually for a cab privilege which the grantor might revoke. The uncertainties attendant upon any future installments were as great as in the case of a covenant to pay rent under a lease. Moreover, in Maynard v. Elliott, though the maker of the note in fact became insolvent before petition filed, and thus the liability of the indorser might have then been calculated, this was not mentioned, or even alluded to, in the opinion. Perhaps it was assumed that his default would certainly be decided before the bankrupt estate was fully administered, and that liquidation could thus take place in time for distribution. Indeed, it would otherwise be hard to find an instance in which the amount of the claim could be more uncertain. In Moch v. Market Street National Bank, 107 F. 897 (C. C. A. 3), and in Re Semmer Glass Co., 135 F. 77 (C. C. A. 2), it appears to have been assumed that the solvency of the maker would be determined in season. When that is so, no practical difficulty arises. But in In re Merrill & Baker, 186 F. 312 (C. C. A. 2), there appears to have been no obstacle to such a liquidation of the claim, and no reason to take a different view from In re Semmer Glass Co., though we did. Again in In re Mullings Clothing Co., 238 F. 58, L. R. A. 1918A, 539 (C. C. A. 2), we allowed a claim for future rent in a situation like In re Roth & Appel, except that the bankrupt had repudiated a contract to accept a lease before petition filed. This did indeed avoid the objection that the claim was contingent in form, but the uncertainty as to its amount, or indeed whether there would be any loss at all, was quite the same. Finally in In re Marshall's Garage, 63 F.(2d) 759 (C. C. A. 2), we accepted the present valuation of land as a permissible subtrahend for calculating damages on a breach of contract to buy five years later. The uncertainty as to the future value of a fee is no less great than as to the value of sequent terms. In that case we observed that it is the practice in cases of anticipatory breach, when the trial comes on before the period of performance has arrived, to forecast its value by the best means at hand. Cf. N. Y. Trust Co. v. Island Oil & T. Co., 34 F. (2d) 653, 654 (C. C. A. 2). And in bankruptcy, if an employer makes anticipatory breach of a future contract, the employee's earning power may be calculated in spite of the uncertainty as to its amount, or as to his continued life and health. In re Schultz & Guthrie (D. C.) 235 F. 907. The same is true of commercial contracts. In re Stern, 116 F. 604 (C. C. A. 2). See, too, In re Portage Rubber Co., 296 F. 289 (C. C. A. 6), although the court did not notice the full scope of its ruling.

On the other hand, the doctrine in Re Roth & Appel, supra (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270, is the law in five other circuits. Slocum v. Soliday, 183 F. 410 (C. C.

A. 1); McDonnell v. Woods, 298 F. 434, 437 (C. C. A. 1); Trust Co. of Ga. v. Whitehall Holding Co., 53 F.(2d) 635 (C. C. A. 5); Atkins v. Wilcox, 105 F. 595, 53 L. R. A. 118 (C. C. A. 5); Wells v. Twenty-first St. Realty Co., 12 F.(2d) 237 (C. C. A. 6); Britton v. Western Iowa Co., 9 F.(2d) 488, 489, 45 A. L. R. 711 (C. C. A. 8); Watson v. Merrill, 136 F. 359, 69 L. R. A. 719 (C. C. A. 8); Colman Co. v. Withoft, 195 F. 250 (C. C. A. 9). The rule in the Third and Seventh circuits is otherwise. In re Keith-Gara Co. (D. C.) 203 F. 585, affirmed 213 F. 450 (C. C. A. 3); In re Chakos, 24 F.(2d) 482 (C. C. A. 7). Furthermore the Supreme Court gave apparent approval to In re Roth & Appel, supra (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270, in Central Trust Co. v. Chicago Auditorium, supra, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, and Filene's Sons Co. v. Weed, 245 U. S. 597, 38 S. Ct. 211, 62 L. Ed. 497, and to Atkins v. Wilcox, supra (C. C. A.) 105 F. 595, 53 L. R. A. 118, in Maynard v. Elliott, supra, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028. Again, whatever may be said of the consistency of the ruling, In re Mullings Clothing Co., supra (C. C. A.) 238 F. 58, L. R. A. 1918A, 539, professed to leave the doctrine untouched, as did In re Marshall's Garage, supra (C. C. A.) 63 F.(2d) 759, 762. Finally, although the Bankruptcy Act has been since twice amended, Congress has made no change in this feature. Indeed as we shall show, it changed the law in this precise respect in one situation, but did not do so in this. For these reasons my brothers believe that it has become the settled law of this circuit and that we should adhere to it. For myself, while I recognize the force of this application of stare decisis, it seems to me that the basis of the doctrine disappears once contingent claims are held to be provable. That has now been authoritatively declared, and I think that we should make the necessary adjustments. Certainly I have no more compunction in assessing the future value of realty, than that of chattels. The periods involved are indeed apt to be longer, but the fluctuations are less rapid. Some chances must be taken, but that is often so.

There remains only the question whether the Act of March 3, 1933 (11 USCA § 201 et seq.), has made a change in the law, assuming without deciding that it applies to pending proceedings. The sentence concluding section 74a, 11 USCA § 202 (a), standing alone, would be enough to justify the proof of such claims, but the section itself is of very limited scope. It applies only to individuals, and occurs in a statute providing only for compositions and moratoriums. The sole color for saying that it should not be confined by its association is that it is redundant, because both "debts" and "creditors" are already so defined as to include claims "for future rent." Literally indeed, in each case the definition extends only to moratoriums, not to compositions, and it is just conceivable that this may give the concluding sentence a function. Congress might have feared the omission, and provided against it out of abundant caution. We rely, however, upon the fact that, as it stands, it is in a context limited as we have said; if the purpose was to give general provability to such claims, we cannot conceive that it would have been tucked in at the end of such a section. Its origin appears from the debates. It was introduced on the floor of the Senate, apparently only for caution. Objection was made by the chairman of the steering committee on the ground that no change was contemplated in the existing act. Upon this the proposer withdrew it temporarily, assenting to the chairman's declared purpose. Why it was again introduced and then accepted does not appear, but the claimant asks us to suppose that it must have been because of a change in intent which then countenanced amendments to the general act. This is a most tenuous inference; it is by far more likely that it was to lay any possible doubts, its original purpose. At any rate, if the intent was broader, the language has too well concealed it; and we hold the sentence does not cover the situation at bar.

Order affirmed.