### In re SARNOFF–IRVING HAT STORES, Inc.

District Court, S. D. New York.
Feb. 4, 1935.

McManus, Ernst & Ernst, of New York City (Lester D. Melzer, of New York City, of counsel), for Irving Trust Co., trustee in bankruptcy of Sarnoff-Irving Hat Stores, Inc.

Stroock & Stroock, of New York City (Robert D. Steefel, of New York City, of counsel), for claimant Miller.

HULBERT, District Judge.

Morris Miller, landlord, petitions to review a referee's report reducing claim filed by him against the bankrupt from $16,625 to $400.

It was stipulated that the claimant and the bankrupt entered into a lease for ten years on January 17, 1928, which was modified in writing on December 29, 1931. An equity action was begun in this District on April 27, 1932, against the now bankrupt company, and two receivers were appointed. One of these receivers subsequently resigned, and the Irving Trust Company continued to act as the sole receiver until it was elected and qualified as trustee, and remained in possession of the premises until July 18, 1932. On June 1, 1932, said sole receiver disaffirmed the lease, and on July 18, 1932, vacated the premises pursuant thereto. The claimant re-entered and took possession on July 25, 1932. On August 27, 1932, the Sarnoff-Irving Hat Stores, Inc., filed a voluntary petition in bankruptcy.

The proof of claim filed by petitioner consisted of two items:

(a) Rent for March and April, 1932, @ $300.00 per month..$   600.00
and

(b) The difference between the rent reserved in the lease from May 1st, 1932 to July 31st, 1938 amounting to $32,000.00 and the fair annual rental of the said premises, to wit, the sum of $2,400.00 per year for a period of three years, and the further sum of $2,700.00 per year for a period of three years, three months, being the balance of said terms as called for in said lease....................$16,025.00

Total .................$16,625.00

The first item (a) was filed as a priority claim, and the second (b) as a general claim.

The trustee objected to the claim and sought to have it reduced to $1,000. After a hearing, the referee reduced it to $400 ($600 having already been allowed and paid as a priority claim).

The claimant now seeks to review the referee's findings.

The lease provided that in the event of a breach the tenant would pay to the landlord, monthly, the difference between the amount obtained on reletting and the reserved rent provided for in the lease.

The questions involved in the instant case are (1) whether the claim is one founded upon a contract, express or implied, and provable under section 63a, of the National Bankruptcy Act, 11 USCA § 103 (a), and (2) whether the damages may be liquidated under section 63b of the act, 11 US CA § 103 (b).

█ The breach having occurred before the petition in bankruptcy was filed, there seems to be no question that the claim is provable under section 63a, but there is a vigorous dispute that the claim can be liquidated under section 63b, and that was the ground upon which the referee disallowed all but that amount accruing *before* bankruptcy.

The claimant contends that this case is not distinguishable from Central Trust Company v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 414, 60 L. Ed. 811, L. R. A. 1917B, 580, in which there was an anticipatory breach of an executory contract covering a license privilege for the maintenance and operation of a baggage and livery concession, with a provision for damages similar to the one in this case. The Supreme Court held that intervening bankruptcy constituted a breach, and that the claim for damages was one founded upon a contract express or implied and provable under section 63a, and that the damages could be liquidated under section 63b.

The claimant argues that since the breach of the lease in the instant case occurred some time before bankruptcy, and since the landlord had already re-entered before the filing of the petition, his damages now are those for the breach of a personal covenant to pay damages, and not for the breach of the lease, and hence falls within the Chicago Auditorium Case, supra.

However, it seems to me that:

█ First, the damages for the breach of the personal covenant are identical with those which could be claimed for breach of the lease and are determinable in the same way. Clearly, the instant case comes within the class of those dealing with a breach of the landlord-tenant relationship.

Secondly, in the Chicago Auditorium Case, 240 U. S. 581, at page 590, 36 S. Ct. 412, 414, 60 L. Ed. 811, L. R. A. 1917B, 580, supra, the court said, "besides which a number of cases arising out of the relation of landlord and tenant are cited: In re Ells [D. C.] 98 F. 967; In re Pennewell, 119 F. 139, 55 C. C. A. 571; Watson v. Merrill, 136 F. 359, 69 C. C. A. 185, 69 L. R. A. 719; In re Roth & Appel, 181 F. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Colman Co. v. Withoft, 195 F. 250, 115 C. C. A. 222. Cases of the latter class are distinguishable because of the 'diversity betweene duties which touch the realty, and the meere personalty.' Co. Litt. 292, b, § 513." That would seem to indicate that the court did not consider landlord and tenant type cases in its opinion and so the decision should not be binding as to them.

In re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270, decided in 1910 by the Circuit Court of Appeals, Second Circuit, there was a lease with a provision similar to the one here in question. The lessees became bankrupt and the landlord sought to prove a claim for damages for breach of the lease. The court said that claims for future rent were, of course, never provable, and that this claim for damages was likewise not provable. It was said at page 672 of 181 F.:

"Indeed, looking at the claim as it existed either at the time of the petition or the adjudication, it was altogether contingent in its nature:

"(1) It was uncertain, as just pointed out, whether the lessor would reenter and terminate the lease.

"(2) In case the lease was terminated, it was uncertain whether there would be any loss in rents. If the rent received by the landlord from the new tenant equaled or exceeded that stipulated in the lease, there would be no loss, and, consequently, no foundation for any claim upon the indemnity covenant."

It is significant that in the Roth Case, the landlord had already relet the premises at a substantially lower rental prior to the filing of the claim which was after the petition was filed but before adjudication, and still the court found that the damages were too speculative, under (2) above, to be determined.

Later, in the case of Manhattan Properties, Inc., v. Irving Trust Co., 66 F.(2d) 470, 471, decided in 1933 by the Circuit Court of Appeals, Second Circuit, affirmed in 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824, the court, in discussing the Roth & Appel Case, said that its former determination as to the contingency of the claim had been expressly overruled by Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028, and, "our decision must rest upon the ground that, though the contingency of the claim is no objection to its proof, it is practically too uncertain to be liquidated." The provision of the lease in the Manhattan Properties Case was like the one here involved, but there was no breach until bankruptcy. A proof of claim for damages was filed and expunged on the authority of In re Roth & Appel, supra, and the decision was affirmed by the Supreme Court, supra.

In the case of In re Outfitters' Operating Realty Co., Inc. (A. W. Perry, Inc., v. Irving Trust Co.), 69 F.(2d) 90, 91, decided in 1934 by the Circuit Court of Appeals, Second Circuit, and recently affirmed by the Supreme Court (293 U. S. 307, 55 S. Ct. 150, 79 L. Ed. ——), a claim for damages for breach of lease was allowed—but there the provision was wholly different from the one here. The Circuit Court, in speaking of different covenants in leases, said: "A common form, which was that in Re Roth & Appel (C. C. A. 2) 181 F. 667, 31 L. R. A. (N. S.) 270, is to pay on each rent day the difference between the rent reserved and rent received upon any reletting; another is to indemnify the lessor for any loss suffered during the term. The second requires the lessor to wait till the end of the term (Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E. 97, 59 A. L. R. 1015); not so the first, under which a separate cause of action arises at the end of each period. *But in both kinds it is uncertain at petition filed whether there will be any loss, and that uncertainty is enough to invalidate the claim.*" (Italics mine.)

While it is true that in the case of In re Mullings Clothing Co., 238 F. 58, decided in 1916 by the Circuit Court of Appeals, Second Circuit, a claim for damages for breach of a lease was allowed where a breach, occasioned by dissolution of the lessee corporation, occurred before bankruptcy and the landlord had relet at a lower figure before the petition in bankruptcy was filed, that decision has been strictly limited to its facts (cf. In re Metropolitan Chain Stores, Inc. (C. C. A.) 66 F.(2d) 482 at page 484) and disapproved of by dicta in the Manhattan Properties Case, supra, both cases decided in the Second Circuit in 1933.

It is also true that there are several statements in the Manhattan Properties Case (supra) which tend to support the claimant's position. The court, speaking through L. Hand, Circuit Judge, said: "Moreover, the whole subject has taken on a new aspect from Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, where bankruptcy was held to be the anticipatory breach of a contract to pay annually for a cab privilege which the grantor might revoke. The uncertainties attendant upon any future installments were as great as in the case of a covenant to pay rent under a lease."

Later on in the same case, in speaking of the doctrine of In re Roth & Appel and cases of similar import, the court said: "Finally, although the Bankruptcy Act has been since twice amended, Congress has made no change in this feature. Indeed as we shall show, it changed the law in this precise respect in one situation, but did not do so in this. For these reasons my brothers believe that it has become the settled law of this circuit and that we should adhere to it. For myself, while I recognize the force of this application of stare decisis, it seems to me that the basis of the doctrine disappears once contingent claims are held to be provable. That has now been authoritatively

declared, and I think that we should make the necessary adjustments. Certainly I have no more compunction in assessing the future value of realty, than that of chattels. The periods involved are indeed apt to be longer, but the fluctuations are less rapid. Some changes must be taken, but that is often so."

Noting that this language appears in a case in which the provision in the lease was the same as that in the instant case, it might seem that if such a claim were provable under section 63a, the court would find no difficulty liquidating it under section 63b, and this point the claimant strongly urges. It should be remembered, however, that in the case quoted, the court found that the claim was *not* provable under section 63a, so that all discussion of liquidating under section 63b was merely dicta.

In the same case, the court also said: "The law, as we now understand it, is therefore that a contingent claim may in general be proved, provided its liquidation does not involve too speculative considerations, confessedly a variable standard. Among these will be the ability of the claimant himself to control the contingency."

The claimant argues that his damage should be the difference between the rent reserved in the lease and the fair and reasonable rental for the remainder of the lease term. If that were the covenant, concededly the law now is that such a claim could be proved and liquidated (Perry Case, supra). However, the provision in this lease is *not* as the claimant above argues. It is that the landlord may recover the difference between the rent reserved in the lease and *the amount obtained on reletting, payable monthly.* While the ability of the claimant himself to control the *contingency* is not here involved, the ability of the claimant himself to control the *amount of the damages* is involved.

To allow such a claim as this would be to substitute the mere whim of the landlord for the safe standard of fair and reasonable rental and to make it possible for the landlord alone to fix the amount of his damages—even up to the total rent reserved in the lease. In my judgment this objection to such claims cannot be overcome, and they are too speculative to be liquidated under section 63b.

In all events, I feel bound by the decisions in this District from In re Roth & Appel, supra, to and including the Perry Case (supra). If the settled law of 25 years is to be overthrown, it should be by a court of appellate jurisdiction.

Accordingly, the referee's report will be confirmed.