### In re MERRILL & BAKER.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

No. 142.

1. BANKRUPTCY (§ 316*)—CLAIMS—CONTRACT—CONSTRUCTION.

Claimant being friendly to M., who desired to borrow money for the benefit of a bankrupt corporation, loaned a specified sum to another corporation controlled by the bankrupt, taking the latter's obligation therefor secured by its collateral, and by an agreement of the bankrupt reciting that it guaranteed repayment of the loan to the claimant by the borrowing company in accordance with its written agreement evidencing the loan and pledge. The money actually borrowed was to be immediately handed over to the bankrupt for its uses. While this loan was unpaid and the collateral unimpaired, claimant loaned a further sum to the borrowing corporation under the same circumstances. Before the loans were repaid or any demand had been made on the borrower, an adjudication was rendered against the bankrupt; claimant still holding the collateral for both loans. Held, that the bankrupt's contract was not a contract of suretyship, but of guaranty only, and, being in writing, and unambiguous; claimant was not entitled to treat the transaction as a loan to the bankrupt because of its control of the borrowing corporation, and the use of the funds for its benefit.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

2. COURTS (§ 359*)—FEDERAL COURTS—CONSTRUCTION OF GUARANTY—WHAT LAW GOVERNS.

Where a guaranty was made in New York, it must be construed in bankruptcy proceedings against the guarantor, according to the New York law, most favorably to the guarantee, though subject to the rule that, when the meaning of the words used has been ascertained, the guarantor's liability is strictissimi juris, and not to be extended beyond its precise import.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 359.*]

3. BANKRUPTCY (§ 316*)—CLAIMS—LIABILITY OF GUARANTOR.

Claimant made certain loans to B. & Co., accepting certain collateral as security with power to sell the collateral if the loan was not repaid within 60 days after demand; B. & Co., also agreeing that, in case the collateral should not sell for enough to pay the principal and interest and expenses, it would pay claimant the amount of the deficiency forthwith after such sale, with interest. As further security, the bankrupt guaranteed repayment to claimant by B. & Co. in accordance with its written agreement. An adjudication was rendered against the bankrupt before

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

either of the loans had been repaid by B. & Co. either in whole or in part, and while the collateral held as security for both loans was still intact in claimant's hands, and before any demand had been made on B. & Co. for payment. *Held*, that the liability of the bankrupt on the guaranty was neither presently due nor capable of liquidation at the time of bankruptcy; there being no certainty that anything would ever be due or that any liability would ever arise thereon, and hence the claimant was not entitled to the allowance of a claim for the amount of the loans against the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 476; Dec. Dig. § 316.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of Merrill & Baker. From an order modifying a referee's decision with reference to the allowance of claims of Walter M. Jackson, so as to expunge the same, claimant appeals. Affirmed on opinion of Hough, District Judge, which is as follows:

The legal questions before the referee and this court are covered by a stipulation as to the facts embracing many matters quite immaterial to a clear statement of the problem presented.

What is material seems to me this: Mr. Jackson was prepared to lend money to the business of his friend, Mr. Merrill. Merrill's business was that of the bankrupt corporation. That corporation conducted its affairs in part through certain subsidiary corporations whose stock was substantially owned by Merrill & Baker. So far as Jackson was concerned, the corporations of Merrill & Baker, of C. T. Brainard & Co., and others were all alike—they were merely the different parts of his friend Merrill's business. In this state of feeling Jackson, at the request of Merrill, loaned to C. T. Brainard & Co. (a corporation controlled by Merrill & Baker) $24,387.50, thereupon Brainard & Co. deposited with Jackson certain collateral for this loan, giving Jackson quite ample powers to sell the collateral if the loan was not repaid "within 60 days after demand." The agreement of pledge then continued, "In case the proceeds of sale (of the pledged property) shall be insufficient to pay the principal, interest and expenses as aforesaid," the Brainard Company promises to pay Jackson "the amount of the deficiency forthwith after such sale with interest." Contemporaneously with the making of this loan and the execution of the agreement of pledge the bankrupt (Merrill & Baker) executed a document stating that it "hereby guarantees the repayment of said ($24,-387.50) to said W. M. Jackson by the said C. T. Brainard & Company in accordance with the written agreement" hereinbefore referred to. The actual and expressed consideration for this guaranty was that most of the money loaned by Jackson to Brainard & Co. was to be immediately handed over to the controlling corporation of Merrill & Baker for its own uses and purposes. The amount of collateral deposited with Jackson by Brainard & Co. under the agreement above referred to was in face value double the amount of the loan, and it was honestly thought to be worth the larger sum, or approximately that.

While this loan was unpaid and while the collateral was unimpaired, Jackson again at the request of Merrill loaned Brainard & Co. the further sum of $9,740, and the Brainard Company executed an agreement whereby it covenanted that the collateral previously deposited with Jackson to secure the $24,000 loan "shall be held by him as security for the further sum of $9,740 this day loaned * * * giving to said Jackson * * * the same authority over said collateral for the payment of this additional loan that it gave to him" in the pledge agreement first above referred to. Merrill & Baker were to receive the benefit of this loan also, and accordingly that corporation in writing contemporaneously guaranteed to Jackson "the repayment of said sum."

·Merrill & Baker·became bankrupt before either. of these loans had. been repaid by Brainard & Co. in whole or in part and while the collateral held as security for both was still intact in the hands of Jackson or his' agents, and before any demand had been made on Brainard & Co. for the payment of either advance. Within a year after adjudication, Jackson filed claims in this proceeding. In each claim he asserted himself to be. a creditor of Merrill & Baker for the full amount of his loan to Brainard & Co., although he still held the collateral and had made no demand on Brainard & Co. for payment until after the declared bankruptcy of Merrill & Baker.

[1] The contract made by the corporation of Merrill & Baker on the occasion of Mr. Jackson making each of his loans was admittedly one of guaranty. Let it also be assumed that a guaranty is a mercantile instrument to be construed according to what is to be fairly presumed to have been the understanding of the parties as ascertained from the circumstances accompanying the whole transaction. Lee v. Dick, 10 Pet. 482, 9 L. Ed. 503; Mauran v. Bullus, 16 Pet. 528, 10 L. Ed. 1056. [2] It will, however, still remain true that this particular contract of·guaranty was made within the state of New York and is to be construed in the light of New. York decisions, and it has in this state been held that, while the words being those of the guarantor must be construed most favorably to the guarantee, the contract is subject to the same rules of interpretation as other contracts, and, when the meaning of·the words used has been ascertained, the guarantor's liability is strictissimi juris, and is not to be extended beyond its precise import. Powers v. Clarke, 127 N. Y. 424, 28 N. E. 402: McShane Co. v. Padier, 142 N. Y. 211, 36 N. E. 880 (below 1 Misc. Rep. 332, 20 N. Y. Supp. 679); Bank v. Coster, 3 N. Y. 203, 53 Am. Dec. 280; Bank v. Kaufman, 93 N. Y. 273, 45 Am. Rep. 204; Schwartz v. Hyman, 107 N. Y. 562, 14 N. E. 447.

Applying these general rules to the interpretation of the agreements before the court, can it be said that there is any ambiguity in the meaning of the words employed by the parties? I think not. There may be said to be. lack of clearness in expressing what was the real intent of Messrs. Jackson & Merrill. If Mr. Jackson be a layman, I have no doubt that he would have described the transactions above recited as loans to his friend Merrill. He doubtless recognized that Merrill had undertaken no personal responsibility to him, but he probably drew no distinction between the liability of Merrill & Baker, Incorporated, and that of Brainard & Co.; and this is really the position advanced by Mr. Jackson's able counsel. It is asserted in argument and brief that because it was the intention of the parties by this apparatus of papers that Jackson should loan money to Merrill's business, then, since Brainard & Co. and Merrill & Baker were but different parts or departments of Merrill's business, these paper writings should be construed as producing primary liability on the part of all the various corporations making up that business and signing any of these documents.

In no legal sense is this ascertaining the meaning or intent of the parties. If men entering into a contract use plain words, those words must be taken to mean exactly what they say. The fact that the parties did not think clearly nor use apt words to express what they intended does not open the way for construction when there is no ambiguity in the language employed. Therefore, while entirely agreeing with much that has been said by counsel for Jackson regarding the intent of the parties, I think the court is constrained to follow the plain meaning of the instruments exchanged.

[3] With reference, then, to the larger loan, there is, in my opinion, nothing to add to the views of the. referee. The engagement of Merrill & Baker was a guaranty. It was not a contract to pay at all events, but a contract that Brainard & Co. could pay, and pay what? Not necessarily the full amount of the debt,·but any deficiency arising from the sale of the collateral. Brainard & Co. were not called upon to pay until demand had been made, and I perceive but one answer to the inquiry—could any action have been maintained on this contract against Merrill & Baker on the day of bankruptcy? Such action would clearly have been' premature. If that action was premature, then no provable claim existed. On this subject there is nothing to add to the review of the cases contained in Re Inman (D. C.) 171 Fed. 185.

If I am right in believing that the documents evidencing the first loan are

plain and unambiguous, there then can be no doubt that the papers proving the second loan conclusively show that it was but an additional advance on the same collateral as the first loan and subject to all the conditions thereof. The distinction based upon the presence in the first guaranty of the words "in accordance with the written agreement" of pledge, and the absence of the same words in the second guaranty seems to me entirely fallacious. The crucial question is the same as to both transactions—had there been any breach on the part of Brainard at the date of bankruptcy which could at that time have justified any suit against Merrill & Baker? Plainly there was not.

To me it is clear that no plainer instance of liabilities neither presently due nor capable of liquidation at the time of bankruptcy can be imagined than these demands of Jackson. There was no certainty that anything ever would be due nor certainty as to what would be due if liability ever arose. The best proof of this is the language of the proofs of claim when compared with the facts shown on this hearing. The proofs of claim demand the full amount of the loan. Mr. Jackson's counsel has taken the only way out of this, and still demands dividends upon the face of debts which have largely been paid. To do this those contracts of guaranty must be construed as contracts of surety-ship. They are not susceptible of such construction, and the referee's decision must be modified so as to expunge both claims.

Dean Emery, for appellant.

George Zabriskie, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The order is affirmed on the decision of the district judge. The difficulty with appellant's careful and extended argument as to the relations of the parties is that the contracts of loan and the contracts of indemnity are all in writing, precisely expressed and free from any ambiguity.