## FIRST NAT. BANK OF PIKEVILLE, KY., v. ELLIOTT.

Circuit Court of Appeals, Sixth Circuit.
May 13, 1927.

No. 4666.

1. Mortgages ⬤=298(3)—Mortgagor's check on deposit created by discounting purchaser's unsecured notes held "payment of mortgage," not released of record, as against bank's claim that security attached to discounted notes.

Mortgagor's check, drawn against account containing money received by discounting, to mortgagee bank, unsecured notes of purchaser of land, *held* payment of mortgage, causing equitable release thereof, notwithstanding that it was not released of record by mortgagee, which asserted that security of mortgage attached to discounted purchase notes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Payment.]

2. Bankruptcy ⬤=314(1)—Bankrupt's collateral obligations are not provable, unless liability is fixed and amount ascertainable as of filing date of petition; "debts" (Bankruptcy Act, §§ 17, 57n, 63a [Comp. St. §§ 9601, 9641, 9647]).

"Debts" provable in bankruptcy within Bankruptcy Act, § 63a (Comp. St. § 9647), must be such as are subject to liquidation as of date of filing of petition, which then existed as fixed liability absolutely owing, and do not include contingent collateral obligations of bankrupts, in view of sections 17 and 57n (sections 9601, 9641).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

Petition to Revise an Order in Bankruptcy of the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Petition by the First National Bank of Pikeville, Ky., against W. K. Elliott, trustee in bankruptcy of Nancy Jane Varney and another, bankrupts, to reverse an order of the District Court, in the matter of petitioner's asserted claims against the trustee. Decree of District Court affirmed.

S. S. Willis, of Ashland, Ky. (J. R. Johnson, Jr., of Pikeville, Ky., on the brief), for petitioner.

Stanley Reed, of Ashland, Ky. (Le. Wright Browning, of Ashland, Ky., and Stratton & Stephenson, of Pikeville, Ky., on the brief), for respondent.

Before DENISON and MOORMAN, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. There is under consideration the petition of the First National Bank of Pikeville, Ky., to revise an order of the District Court, in the matter of petitioner's asserted claims against the trustee in bankruptcy of Nancy Jane Varney and Pricy A. Varney. Two questions arise, depending upon different states of fact. Respecting the first the essential facts are as follows:

[1] One Rutherford, owning an undivided interest in a tract of land, mortgaged the same to the petitioner for $8,177. Subsequently Rutherford, having acquired the full interest, sold the property to the bankrupt, Pricy A. Varney, conveying the same by warranty deed for a recited consideration of $1 "and other valuable considerations," although, actually, were given two notes, for $5,000 each, payable in two and three years from date (February 2, 1924), signed by both bankrupts, carrying the recitation that they represented "purchase money on real estate." No lien, however, was retained in the deed to secure these notes, which was necessary under the law of Kentucky to give priority over the claims of intervening creditors without notice.

At the time of the execution of these notes the bankrupts were solvent, and were so considered by the petitioner at the time of the transactions under consideration. Two days later, Rutherford indorsed the notes in blank, and discounted them with the petitioner; the proceeds being credited to his checking account with the petitioner. Thereupon he drew his check to the order of the petitioner for $8,177, and therewith took up his note for that amount. The mortgage securing the same was not, however, released of record, and nothing was said between the parties respecting release, or, in fact, concerning the mortgage. The note for $8,177 had been entered on petitioner's note regis-

ter, with a notation that it was secured by mortgage on the Rutherford land. The two $5,000 discounted notes were entered on the same register, with no notation on the blank provided for noting security, if any. The liquidation of the $8,177 note was entered on a sheet kept to show daily transactions with loans, discounts, payments, and renewals, and, in addition, the words "by P. A. and N. J. Varney notes." As part of this entry now appears the letter "R," which, in the bank's practice, stands for "Renewed." The effect of this entry, if it is unimpeached, would be that the two $5,000 notes were received as renewing the mortgage indebtedness to the extent of the mortgage note; but it is insisted by the trustee, and there is important physical evidence to justify the claim, that, originally, that which now appears to be an "R" was a "P," which, in the bank's practice, stands for the word "Paid"; and that the additional stroke to transform the "P" into an "R" was subsequently made. The original of this sheet, headed "Register of Loans and Discounts Paid, Credited, or Renewed," which was before the court below as Exhibit B, is sent up by stipulation for the consideration of this court.

The transactions involved cover a period of but 19 days; that is, Rutherford made the mortgage to the bank on the 16th of January, 1924, and on the 4th of February the mortgage note was taken up in the manner designated. Petitioner, in August, 1925, made proof upon these notes against both bankrupts, reciting that they were "purchase-money lien notes on real estate, situated," etc. In the proofs the mortgage from Rutherford to the petitioner was referred to, although not specifically claimed as a lien, and a certified copy thereof, together with a copy of the deed to the land from Rutherford to Pricy A. Varney, were attached as exhibits.

In January, 1926, petitioner amended its claims, by asserting that it took from Rutherford the "purchase-money lien notes" in question "in exchange" for the $8,177 mortgage note, and that the indebtedness evidenced by the latter "was secured, and still is secured, by a mortgage on the property therein described, * * * and that said mortgage has never been paid or released, but still subsists as a lien, * * * and that by virtue of said mortgage" petitioner has a lien on the land therein described, conveyed by Rutherford to Pricy A. Varney, for $8,177, with interest from the date of the note for that amount. Subsequent to the transaction between Rutherford and the

bankrupts, the latter became involved in large amounts and became insolvent, with many new creditors who had no notice of the claims of petitioner, save such, if any, which resulted from the presence of the unreleased mortgage from Rutherford to petitioner.

The question raised by this state of facts is whether the petitioner bank accepted Rutherford's check for $8,177 as a payment of the mortgage note, thus extinguishing the security, or whether the transaction, considered in its whole aspect, should be regarded as a mere substitution of the two $5,000 purchase-money notes, pro tanto, for the surrendered mortgage note, leaving still existent petitioner's mortgage on an undivided four-sixths of the real estate acquired by Pricy A. Varney from Rutherford. It is conceded that, if the transaction amounted to a payment of the mortgage note, the lien is extinguished, and the bank's claim is reduced to an unsecured status.

Undoubtedly the petitioner could have preserved its lien through the mortgage and at the same time have extinguished the $8,177 note through the acceptance from Rutherford of the two "purchase-money" lien notes." But this, we think, would have involved, necessarily, the consent of the bankrupts. Pricy A. Varney, one of them, had taken from Rutherford a title warranted to be free and unincumbered. The only lien upon the property to which he and his wife, the other bankrupt, had consented, was that arising from the fact that the purchase money had not been paid. Payment thereof had been deferred, by the terms of the notes, for a period of not less than two years, whereas the mortgage note was due and payable within four months. It was for them to say —not Rutherford, nor even the petitioner, should it desire to take the lien notes in exchange for the mortgage note—whether or not the lien upon their property, to which only they had consented, should be changed in character to that of a defeasible conveyance to the petitioner of the title. In receiving Rutherford's warranty deed, which they took with at least constructive notice of the incumbrance which Rutherford was bound to clear up, they stipulated in effect that no such situation as now contended for by the petitioner should arise.

This consideration, it seems to us, leaves inapplicable the current of authority cited in behalf of petitioner to the effect that a substitution of a new promise to pay is not a payment of the indebtedness theretofore subsisting, and that the security is not af-

fected by a change in the form of the debt. If the petitioner's position is acceptable, there would result a change of the form of the security to which the bankrupts have not assented, and, as well, as the court below observed, a change in the form of the debt. There is ample evidence supporting the conclusion of the referee and the court below that payment, not renewal, was the effect of taking Rutherford's check for his note. We find no reason in the record to question this finding. From it follows, as a matter of course, the equitable release of the mortgage.

[2] The facts of the second question are: In December, 1924, one K. L. Varney made to petitioner a note for $5,000, due in four months, indorsed by W. P. T. Varney, who guaranteed payment, waiving notice of protest and nonpayment, and consenting that the securities for the loan evidenced by the same might be exchanged or surrendered from time to time, or the payment of the loan extended without notice or further assent by him. As collateral to this loan were offered and taken four notes made by Ferd H. Varney, dated October 3, 1924, for $2,400 each, payable in one, three, five, and seven years after date, to the order of W. P. T. Varney. They were indorsed in blank by the bankrupts, Nancy Jane Varney and Pricy A. Varney, and also by the payee, W. P. T. Varney. Nancy J. and Pricy A. Varney were adjudicated bankrupts August 3, 1925.

The law of Kentucky provides (section 89 of the Negotiable Instrument Law [Laws 1904, c. 102]) that: "When a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." The first collateral note was dishonored by nonpayment two months after bankruptcy intervened, but there was no compliance with the provision of the Kentucky law just quoted respecting notice to the indorsers. August 18, 1925, before even the first collateral note had matured, or default thereon had occurred, but after the principal $5,000 note had matured, proof against bankrupts as indorsers of the collateral was attempted in the bankruptcy proceeding. At this time all the makers and indorsers of all notes were insolvent, but it is not disclosed whether any save Pricy A. and Nancy Jane Varney were in bankruptcy.

The referee denied the petition of the trustee to expunge and reject this claim, and allowed it against the estate of the bankrupt indorsers to the amount of the $5,000 note, together with interest to the date of bankruptcy. On review, the court below held that the collateral note maturing October 3, 1925, within one year from the date of the bankruptcy, might have been proven after dishonor, on the authority of Moch v. Market Street National Bank (C. C. A.) 107 F. 897, but that the claim, as far as that note is concerned, should be denied for want of compliance with the Kentucky law respecting notice of dishonor, and that none of the claims asserted upon the three remaining collateral notes was provable, because the liability of the bankrupt indorsers had not become absolute and fixed by maturity and notice of nonpayment within the year following bankruptcy, during which time claims might be proved.

The applicable and familiar sections of the Bankruptcy Law are, as they stood at the time:

"Sec. 17. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except," etc.

"Sec. 57n. Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication. * * *

"Sec. 63a. Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not; * * * (4) founded upon an open account, or upon a contract express or implied. * * *" Comp. St. §§ 9601, 9641, 9647.

There is a decided conflict among the adjudications in the interpretation of section 63a of the Bankruptcy Act. One line of cases, of which Moch v. Market Street National Bank, supra, is most frequently cited, holds that the first and fourth subdivisions of section 63a are distinct and independent provisions; that the qualification of subdivision 1, that only debts which are "a fixed liability, * * * absolutely owing at the filing of the petition," is not to be read into subdivision 4, which provides that a debt "founded upon an open account, or upon a contract express or implied," may be proven.

The court below was under the impression that the rule of Moch v. Market Street National Bank, supra, had been adopted in this circuit because of the decisions in Germania Savings Bank v. Loeb (C. C. A.) 188 F. 289, and Courtney v. Fidelity Trust Co. (C. C. A.) 219 F. 57. Neither of these,

however, commits this court to follow the Moch Case. In Loeb's Case, Moch v. Market Street National Bank was followed only to the point that a debt is provable, whether due or not, at the time of bankruptcy, if the amount of bankrupt's obligation could be ascertained as of that date. Courtney v. Fidelity Trust Co., supra, involved the application of a law of Kentucky which conferred on a landlord a lien on the personal property of a tenant after possession taken for not more than one year's rent due or to become due, and it was held that, because of the provisions of section 67d of the Bankruptcy Act (Comp. St. § 9651), preserving certain liens, a rent lien accruing under the limitations of the Kentucky act was provable under section 63a. Moch v. Market Street National Bank was referred to in the opinion (page 66) only as that case underlaid the decision of certain Pennsylvania cases which involved a Pennsylvania statute respecting liens for rent to accrue similar to that in Kentucky.

A much stronger line of authority than that following Moch v. Market Street National Bank restricts provable debts, whether coming under subdivision 1 or subdivision 4 of section 63a, to those which were ascertainable at the time of the filing of the petition. In Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084, the court, quoting, on page 349 (23 S. Ct. 761), section 63a, and holding that section 63b, providing for liquidation of unliquidated debts, adds nothing to the class of debts which are provable under section 63a, says (page 350 [23 S. Ct. 761]): "We do not think that by the use of the language in section 63a it was intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove."

The court proceeds, then, to note the significant fact that, respecting contingent liabilities, the present law is much more restricted in its provisions than the Bankruptcy Acts of 1841 and 1867 (5 Stat. 440; 14 Stat. 517), which provide expressly for cases of contingent debts and liabilities contracted by the bankrupt. In Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. Ed. 147, and in Grant Shoe Co. v. Laird, 212 U. S. 445, 29 S. Ct. 332, 53 L. Ed. 591, it is held that claims which are based upon a right of action present at the time of, or created by, the filing of the petition, are provable subject to liquidation under section 63b.

Finally, the exact question, although not directly involved, was considered by the Supreme Court in Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664. Therein the court, after referring to the terms of section 63a, said, at page 631 (33 S. Ct. 368): "But, reading the whole of section 63, and considering it in connection with the spirit and purpose of the act, we deem it plain that the debts founded upon open account or upon contract, express or implied, that are provable under section 63a(4), include only such as existed at the time of the filing of the petition in bankruptcy. This court in effect adopted that construction when, in promulgating the General Orders and Forms in Bankruptcy, in 1898, under the authority conferred by section 30 [Comp. St. § 9614], a form of discharge was prescribed (Forms in Bankruptcy, No. 59), by which it is ordered that the bankrupt 'be discharged from all debts and claims which are made provable by said acts against his estate, and which existed on the ——— day of ———, A. D. ———, on which day the petition for adjudication was filed ——— him, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy.' " The opinion proceeds by citing with approval a series of cases to this effect decided by the lower federal courts, including Colman Co. v. Withoft (C. C. A.) 195 F. 250, 252.

Colman Co. v. Withoft is a decision of the Circuit Court of Appeals for the Ninth Circuit. Therein it is held (page 251) that: "The date of filing the petition in bankruptcy is intended to mark the line of separation between debts that are provable and those that are not provable against the bankrupt's estate. Those that are not provable remain subsisting obligations of the bankrupt, and he is not released therefrom by his discharge. The adjudication of bankruptcy does not dissolve contractual relations between the bankrupt and others. It takes from him his property and devotes it to the payment of debts which are provable under sections 63a and 63b of the Bankruptcy Act, but it does not dissolve him from the obligations of contracts."

In Williams v. United States Fidelity Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713, the court says, at page 552 (35 S. Ct. 289): "This cause presents the following question: Does a discharge in bankruptcy acquit an express obligation of the principal to indemnify his surety against loss by reason of their joint bond conditioned to secure his faithful performance of a building contract broken prior to the bankruptcy when

the surety paid the consequent damage thereafter?"

This question was answered in the affirmative, plainly because the liability of the bankrupt to indemnify his surety had matured prior to or by the institution of the bankruptcy proceedings. On page 556 of the opinion (35 S. Ct. 291), citing Dunbar v. Dunbar, supra, Crawford v. Burke, supra, Grant Shoe Co. v. Laird, supra, and Zavelo v. Reeves, supra, the court says: "Within the intendment of the law provable debts include all liabilities of the bankrupt founded on contract, express or implied, *which at the time of the bankruptcy were fixed in amount or susceptible of liquidation.*" (Italics ours.)

In re Portage Rubber Co. (C. C. A.) 296 F. 289, 291, the question was whether damages caused by an anticipatory breach, through bankruptcy, of a contract, should be ascertained as of the date of the institution of the proceedings or as of the adjudication. Holding that the former date controlled, this court, quoting from Zavelo v. Reeves, supra, said: "It would seem from a reading of section 63 of the act that it is debts which are owing at the time the petition is filed, * * * and those only, which may be proved."

In Central Trust Co. v. Chicago Auditorium, 240 U. S. 581; 592, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, the Supreme Court approved the language of Judge Lowell in Re Pettingill & Co. (D. C.) 137 F. 143, 147, that: "The test of provability under the act of 1898 may be stated thus: If the bankrupt, at the time of bankruptcy, by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain *at once* a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under section 63b." (Italics ours.)

In the instant case it was not possible to assess damages as of the date of the institution of bankruptcy proceedings. Then whether or not any obligation would eventuate against bankrupts was subject to an unmatured contingency, namely, whether the maker of the collateral notes would default after maturity. Even this contingency, under the Negotiable Instruments Law ripening liability of the bankrupt indorsers, was dependent, at the time of default and dishonor, and not earlier, upon the formality of notice. Bankruptcy, under the circumstances here, could not work an anticipatory breach of the indorsement contract to the result that a provable debt became established as of the date when proceedings were instituted.

Aside from cases cited, the doctrine of Moch v. Market Street National Bank, supra, is disregarded in the First Circuit (In re Swift, 112 F. 315, 321); in the Second Circuit (In re Roth & Appel, 181 F. 667, 31 L. R. A. [N. S.] 270); in the Fifth Circuit (Atkins v. Wilcox, 105 F. 595, 598, 53 L. R. A. 118); and in the Eighth Circuit (Watson v. Merrill, 136 F. 359, 69 L. R. A. 719, Bank v. Stuppi [C. C. A.] 2 F. [2d] 822, and Britton v. Western Iowa Co. [C. C. A.] 9 F.[2d] 488, 45 A. L. R. 711). Without referring to either case, this court, in Wells v. Twenty-First Street Co. (C. C. A.) 12 F.(2d) 237, applied the principle of In re Roth & Appel, supra, rather than that of Moch v. Market Street National Bank, supra.

Our conclusion, from the foregoing review of the authorities, is that debts which are provable in bankruptcy within any of the categories of section 63a must be such as are subject to liquidation as of the date of the filing of the petition and which then exist as a fixed liability absolutely owing, whether or not then due and payable. The collateral obligations of the bankrupts, attempted to be proven in this case, do not meet these imperative conditions.

The decree of the District Court is affirmed.