## In re ADAIR REALTY & TRUST CO.

### Claims of NEUMAN et al.

District Court, N. D. Georgia. November 9, 1929.

No. 12643.

532

Spalding, MacDougald & Sibley, of Atlanta, Ga., for Globe Indemnity Company.

Howell, Heyman & Bolding, of Atlanta, Ga., for Minnie Neuman.

Branch & Howard, of Atlanta, Ga., for objector.

SIBLEY, District Judge. The bankrupt, Adair Realty & Trust Company, is a trust company under the laws of Georgia, with powers fixed by Georgia Civ. Code 1910, § 2817, as enlarged by Acts Ga. 1917, p. 56. Among them is (subsection 11, § 2817, Civ. Code Ga. 1910), the power "to purchase, invest in, and sell stock, bills of exchange, bonds and mortgages, and other securities." In its business of selling bonds it executed a number of underwriting contracts whereby it engaged to sell entire bond issues amounting to millions of dollars upon buildings to be erected. Each contract roughly stated, provided that the bond issue should be delivered to the Adair Company, which should have 10 per cent. for selling them at par, together with any profit made above par, and binding the company, by a fixed date, to furnish for use in the building the whole 90 per cent. of the face of the issue whether the bonds had then been sold or not. In order to make the bonds salable, the company made an indorsement on each reading thus: "In consideration of the purchase of this bond Adair Realty & Trust Company does hereby guarantee the payment of the within bond, both principal and interest according to the tenor and effect thereof. (Signed) Adair Realty & Trust Company." The company also arranged with the Globe Indemnity Company to issue certificates of guarantee of many of the bonds in consideration of a premium paid direct to the Globe Company, and as a basis therefor made an indemnifying contract with the Globe Company agreeing to repay it any loss or expense it might sustain by reason of issuing such certificates. The Adair Realty & Trust Company was adjudged bankrupt April 15, 1927, on a petition filed March 30, 1927. Many claims have been filed for allowance based upon the indorsements by the bankrupt of the bonds, of which that of Minnie Neuman is typical. The Globe Indemnity Company has also filed a claim based upon its contract of indemnity. Allowances of these claims by the referee are for review.

1. The referee allowed the Neuman claim for the full principal and interest of the indorsed bonds over the objections that no default touching the bonds had been declared at the time of the bankruptcy; that no foreclosure upon the security had been had; that the bankrupt's liability was, when the petition was filed, contingent and uncertain, and not a provable debt; and that the indorsement by the bankrupt corporation was an act ultra vires and void.

It appears that none of the bonds involved in this claim had been declared in default by the trustees in the securing mortgages at the time of the bankruptcy, although the makers in all save one issue had failed to meet one or more interest payments. Some of these defaulted payments had been supplied by the Adair Company out of its own funds, in fulfillment of its indorsement, and some had not been paid at all. I think these differences in the status of the several bonds are not material. The indorsements of the bonds by the Adair Company are direct, unconditional promises by that company to pay the bonds, both principal and interest. There is no guarantee of the solvency of the makers of the bonds or of the sufficiency of the security, but of the payment by them of both principal and interest at the times the several payments are promised in the bond. Although the word "guarantee" usually imports a liability only after the principal debtor has been exhausted, the word is ambiguous. To guarantee payment according to the tenor of the bonds carries an obligation to pay principal and interest at the dates promised in the bonds. Such was the practical construction given the indorsement prior to the bankruptcy. The contract was made at the time of the sale of the bonds and for the same consideration, and was in effect one of suretyship. Fields v. Willis, 123 Ga. 272, 51 S. E. 280; 28 C. J. 892, note 60. In Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945, the indorsements signed by the bankrupts, quoted on page 30 were quite similar to those here involved, and were held provable whether due at the time of bankruptcy or later. Under the indorsements here involved, there is clearly "a fixed liability

\* \* \* absolutely owing at the time of the filing of the petition \* \* \* whether then payable or not" as defined in class 1 of section 63a of the Bankruptcy Act, 11 US CA § 103(a)(1), touching provable debts. The referee correctly held the indorsed bonds to be provable debts against Adair Realty & Trust Company, unless the act of indorsement was ultra vires.

■ 2. It is stipulated that the bankrupt corporation never complied with the conditions of Georgia Civ. Code 1910, § 2817, subsec. 13, as amended by Acts Ga. 1917, p. 56, to enable it to exercise the charter powers therein given "to engage in the business of guaranteeing the payment of bonds and notes secured by mortgage or deed to real estate within the State of Georgia," and that the bonds in question were secured by real estate without the state of Georgia. Had the company for a consideration merely guaranteed these bonds, having no other interest in or connection with them, as the Globe Indemnity Company did, there would be much weight in the contention of want of power under this charter. The power of a Georgia trust company to indorse or guarantee obligations of others was considered In re Bankers Trust Company (D. C.) 27 F.(2d) 912, and the power to make an accommodation indorsement denied. The circumstances are quite different here. Under Civ. Code Ga. 1910, § 2817, subsec. 11, the Adair Company had unconditional power to buy and sell bonds secured in any way, or wholly unsecured. They undertook to sell these bonds without buying them, for a fixed profit of 10 per cent., with a possibility of more. Perhaps the agreement was thus far a mere agency, but it bound the Adair Company, if it did not sell the bonds by a fixed date, to put up the money for them anyhow; any unsold bonds, by a fair implication, thereupon becoming the property of the Adair Company. A similar contract was so construed in Stewart v. Miller, 161 Ga. 919, 132 S. E. 535, 45 A. L. R. 559. It follows that in selling each bond the company either had its own money in the bond and was trying to get it out, or was trying to avoid putting its money into it, by the sale. In either case its relation to the bond was such as to make it proper for it to guarantee its payment in order to sell it. The only escape from this conclusion would lie in a denial of the validity of the contract under which the company was handling the bond, and no such attack has been made. These contracts having been apparently fully executed on both sides, it would probably be impossible to attack them as ultra vires, if for any reason they were beyond the general power given the company to buy and sell bonds. 14a C. J. 319. The allowance of the Neuman claim was therefore correct.

■ 3. Each bond issue was secured by substantial real estate, but it was not the property of the Adair Company. It seems to be settled that, although the liability of the bankrupt estate be only secondary, the claim is to be allowed in full, and dividends paid, regardless of the security until full satisfaction is had by the creditor from some source. Gorman v. Wright (C. C. A.) 136 F. 164; In re New York Commercial Co. (C. C. A.) 233 F. 906; Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945. Should it turn out that the bankrupt estate is entitled to any reimbursement from the principal debtors and their property, it may be sought hereafter.

■ 4. The claim of the Globe Indemnity Company, upon its contract of indemnity, is quite different. As against the attack of ultra vires, the contract is to be supported on the same reasoning as that above. But at the time of the bankruptcy it is doubtful if there was any present ascertainable debt then owing and capable of being liquidated. The Adair Company only agreed "to indemnify the (Globe) Company against any and all liability, loss, costs, damages, attorney's fees and expenses of whatever kind or nature which the company shall sustain or incur by reason or in consequence of issuing" its certificates of guaranty of the several bonds. These certificates made the Globe Company liable only after a failure in payment of the bonds by a foreclosure procedure, or in any case after the bonds shall have been in default twelve months, and then only on condition that certain premiums have been paid and certain notices given. Assignment to the Globe Company of any bonds or coupons paid by it is provided for, and there is grave doubt whether foreclosure would not in every case have to be gone through with before the Globe Company could ascertain its loss and claim indemnity. This claim could not be supported under section 63a(1) of the Bankruptcy Act, 11 USCA § 103(a)(1), and must be referred to section 63a(4), Bankruptcy Act, 11 USCA § 103(a)(4), as "founded upon \* \* \* a contract express or implied." The trend of authority is that, even under this class, there must be an existent "debt"; that is, a money demand, not merely potentially but actually and presently owing, though perhaps not yet liquidated or due at the time of bankruptcy. Thus in Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L.

Ed. 1084, unaccrued installments under a contract settling a wife's alimony were held not provable and not discharged in bankruptcy because they were contingent on the wife's living and her not remarrying. On account of contingencies involved, the Circuit Court of Appeals for the Fifth Circuit held, in Atkins v. Wilcox, 105 F. 595, 53 L. R. A. 118, that unaccrued rentals could not be proved where the trustee did not elect to take over a lease as an asset. In re Inman & Co., 171 F. 185, Judge Newman, in this court, after reviewing the authorities, held that unearned salary under a contract of employment could not be proved, and his decision was approved by the Circuit Court of Appeals of the Second Circuit in Re Merrill & Baker, 186 F. 312. The Circuit Court of Appeals for the Sixth Circuit, in First National Bank v. Elliott, 19 F.(2d) 426, after a full review of these and other cases, held that the liability of an indorser for negotiation of commercial paper was not a provable debt where at the time of the bankruptcy the paper had not been dishonored, and the indorser's liability thereby fixed. A contract of indemnity was thought not provable where the loss to be indemnified had not accrued at the time of bankruptcy. In re Tassinari (D. C.) 249 F. 990. Williams v. United States Fidelity and Guaranty Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713 however establishes that, where the facts fixing liability occurred before the bankruptcy, the claim under a contract of indemnity is provable, though the loss had not been then liquidated and was not paid until after bankruptcy.

I think the fair result of all these cases is that, upon such bond issues as at the time of the filing of the petition the conditions had all occurred which were necessary to fix liability on the Globe Company to the holders of its certificates, such as actual default for twelve months, with premiums paid and notices duly given, there would be a provable debt arising under this indemnity contract, though the final amount of it could not be ascertained and liquidated until after foreclosure, and though nothing may have then been paid out by the Globe Company. But, where the liability had not thus become a fixed one at the time of the bankruptcy, no claim in respect thereof can be proven. The stipulated facts tend to show that some of the bond issues were thus in default and some not. The situation as to premiums paid and notices given is not made clear. The referee should not have allowed the entire claim, and direction is given that it be reopened and allowed for such portions of it only as are allowable under this opinion.

5. It appears, however, that the Globe Company has since taken up all the bonds in respect of which it claims indemnity. Thus, by the terms of its certificates, as well as by general principles of equity, 28 C. J. 945, it is subrogated to all the rights of the bondholders, including the right to enforce the indorsement of the Adair Company, and claims founded on these indorsements, like the claim of Minnie Neuman, might with more certainty and satisfaction be relied on, if not too late.