682

In re LEHRENKRAUSS et al.

No. 25564.

District Court, E. D. New York.
May 11, 1936.

Archibald Palmer, of New York City, for trustees in bankruptcy.

Geis, Forman & Schulze, of Brooklyn, N. Y., for claimant.

BYERS, District Judge.

This is a motion to confirm the order of a referee in bankruptcy granting the motion of the trustees to expunge the claim of Charles H. Bruns.

The claimant, at the time of the filing of the involuntary petition (December 6, 1933) was the owner of a bond and mortgage in the sum of $30,000.00, made in 1933 by Omnis Corporation, the payment of which had been guaranteed by the bankrupts, in the following form:

"J. Lehrenkrauss & Sons, as guarantors, in consideration of the sum of One Dollar and other good and valuable considerations, do, subject to the conditions annexed hereto, guarantee to ——— hereinafter called the mortgagee, the payment of the principal secured by the mortgage described below, and the bond to which said mortgage is collateral; and interest on said principal at the rate of ——— per centum per annum payable ———.

"It is agreed that the guarantors are to retain as compensation for their guarantee all interest collected in excess of the guaranteed rate.

"It is further understood and agreed that the said mortgagee by accepting the mortgage or the assignment of the mortgage hereby guaranteed and in accepting this guarantee does agree to all of the terms and conditions* set forth and annexed hereto and further agrees that this guarantee shall supersede and render null and void any guarantee previously given.

"The bond and mortgage to which the above guarantee applies was made by ——— and on which there is now due the sum of $——— dated ——— and covers premises

"J. Lehrenkrauss & Sons,
"Dated:               By ———"

*The conditions are ten in number and may be paraphrased thus:

1. The guarantors shall collect principal and interest as agents of mortgagee.

2. Any extension of time to pay requires guarantors' consent, otherwise guarantee becomes void.

3. Guarantors maintain fire insurance and have custody of policies.

4. Assignment of bond and mortgage to guarantors if they have to pay interest or principal.

5. Guarantee voided by assignment of bond and mortgage without their written consent, also

a. Catastrophe affecting status of mortgaged property.

b. Uncollectibility of fire insurance because of general conflagration.

c. Fire insurance not obtainable.

d. Change of law in relation to taxation or tax rates so as to affect the mortgage or the debt thereby secured.

6. Guarantee void if mortgage becomes due during time of panic or financial stringency.

7. 18 months' grace for payment by guarantors after demand.

8. Assignment of bond and mortgage requisite if guarantee paid.

9. Compensation to guarantors if mortgage satisfied or assigned without written consent.

10. Guarantors authorized to foreclose mortgage as agent of mortgagee.

The proof of claim recites that the claimant, as trustee of an estate, makes the claim in behalf of the estate, and that the bankrupts "were, on or before the time of the filing of the petition in bankruptcy herein, and still are, justly and truly indebted to the said claimant in the sum of $30,000. That the consideration of said debt is as follows:

"(A) That for a good and valuable consideration, including the retention of a portion of the income thereon, the above bankrupts, J. Lehrenkrauss & Sons, executed and delivered to the above named claimant their guarantee in writing in and by which said bankrupts, J. Lehrenkrauss & Sons, guaranteed the payment to the claimant of the principal amount and interest of the following * * * bonds and mortgages:

"Bonds and Mortgages

| "Mortgagor or Owner | Location | Amount |
|---|---|---|
| "Omnis Corporation | Northwest corner of 5th Ave. and 42nd Street, Brooklyn. | $30,000. |

"That said bankrupts have defaulted in the payment of the principal and interest guaranteed by them upon the aforementioned mortgage participation certificates now owned by the claimant herein and have defaulted in the terms and provisions of the said instruments of guarantee by omitting to pay to the claimant herein the principal and interest that has accrued upon the bonds and mortgages aforesaid, also owned by the claimant herein; and that said bankrupts are, by virtue of said instruments of guarantee, indebted to the claimant for all principal and interest not yet due that may accrue and become payable upon the bonds and mortgages aforesaid."

Then follow certain conventional matters, to the effect that no part of the claim has been paid, and that there are no offsets or counterclaims except the market value of the bond and mortgage (or the net fair market value of the property covered thereby) etc. That no security for the said debt, except as aforesaid, has been received, and that no judgment has been rendered, nor any note or evidence of the debt been received except as stated.

The claim continues:

"Nothing herein contained shall be deemed a waiver of any rights or remedies held by the claimant against the aforesaid * * *, bonds and mortgages, * * * and the rights belonging to the claimant thereunder."

The proof was filed with the referee within six months after the date of adjudication, and was objected to by the trustees in the month of January, 1936, and accordingly came on for hearing with the result that the objection was sustained by order of the referee dated April 2, 1936.

A certificate of review recites the claim as above stated. and continues:

"It is conceded that there was no default in the payment of principal or interest on or before the date of the filing of the petition of bankruptcy herein i. e. December 6th, 1933. The mortgage became due January 1st, 1934.

"The objection of the Trustees was solely on the ground that there was no debt based on the guarantee in existence at the time the bankruptcy petition was filed by reason of the fact that there had been no default in the payment of principal or interest on the mortgage at that time and that, therefore, no indebtedness existed on the guarantee on which a claim provable in bankruptcy could be filed.

"On the authority of Bibb v. Pope (C. C.A. 2d Cir. [D.C.]) .22 F.(2d) 557, I granted the motion of the Trustees to disallow the claim and signed the aforesaid order."

The certificate continues by pointing out that the claimant asserts that there was a default by reason of the anticipatory breach of the guarantee created by the filing of the petition.

Further that a number of claims of a similar nature are before the referee and that in more than half of them it is probable that there was no actual default in the payment of their interest or principal prior to the bankruptcy.

The question for decision is whether the ruling of the referee, in expunging the claim, was correct.

The Supreme Court has held in Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 392, 75 L.Ed. 1028, that the obligation of a bankrupt endorser upon notes was properly the subject of a proof of claim, although the notes themselves had not become due when the petition was filed. Some of the notes did become due within the one-year period established as fixing the time for discharge.

That case recognizes that not all contingent claims are provable; the opinion says: "The contingency of the bankrupt's obligation may be such as to render any claim upon it incapable of proof. It may be one beyond the control of the creditor, and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach. In re Merrill & Baker, 186 F. 312."

The latter case was also cited on this point in Miller v. Irving Trust Co., 296 U. S. 256, 56 S.Ct. 189, 80 L.Ed. ——, decided December 9, 1935, so that it may be accepted as a present authority for the proposition embodied in the foregoing quotation.

This invites attention in connection with the later observation in the opinion in Maynard v. Elliott, supra, upon which the claimant relies, to the effect that the unmatured claim against an endorser of paper stands upon "the same plane as contracts of suretyship or guarantee of payment of a debt not due until after the bankruptcy."

May it be said that the court is still required to ascertain whether a given claim based upon a guarantee of payment is so contingent as to fall within the Merrill & Baker Case?

The case of Bibb Mfg. Co. v. Pope, supra, upon which the referee relies, is a decision of the District Court in the Southern District (22 F.(2d) 557, 558) which was affirmed by the Circuit Court of Appeals without opinion 22 F.(2d) 558. The guarantee was thus described in the opinion of the District Court: "The defendant is a guarantor under an agreement to make various payments by monthly installments of sums of money in discharge of a judgment recovered by the plaintiff herein against C. H. Pope & Co., Inc. These payments were met up to May 15, 1923, when the first default occurred. Similar monthly defaults occurred up to December 24, 1923, when the defendant filed his voluntary petition in bankruptcy. He thereafter filed a petition for a discharge. On October 16, 1923, an involuntary petition in bankruptcy was filed against C. H. Pope & Co., Inc., and it was thereafter adjudicated a bankrupt but has received no discharge. At the time the defendant filed his petition in bankruptcy there were installments aggregating $14,000, due and unpaid by C. H. Pope & Co., Inc., under its agreement, and $43,000 thereafter to become due."

After finding that there was no acceleration of the entire indebtedness prior to the bankruptcy, the court said: "Installments due and unpaid by his principal before the petition was filed are provable claims against a guarantor or surety, and those falling due thereafter are contingent liabilities, unaffected by a discharge. In re Merrill & Baker (C.C.A.) 186 F. 312."

The latter case involved the guarantee of payment of a collateral loan made to a subsidiary of the guarantor corporation, the bankrupt. As to that the court said: "The engagement of Merrill & Baker was a guaranty. It was not a contract to pay at all events, but a contract that Brainard & Co. [the subsidiary] could pay, and pay what? Not necessarily the full amount of the debt, but any deficiency arising from the sale of the collateral [which had been posted by the subsidiary]. Brainard & Co. were not called upon to pay until demand had been made, and I perceive but one answer to the inquiry—could any action have been maintained on this contract against Merrill & Baker on the day of bankruptcy? Such action would clearly have been premature. If that action was premature, then no provable claim existed. On this subject there is nothing to add to the review of the cases contained in Re Inman (D. C.) 171 F. 185."

The case of Bibb Manufacturing Co. v. Pope, supra, was followed in Re Kaplan (D.C.) 44 F.(2d) 669, in which the terms of the guaranty are not quoted, the reference in the opinion being as follows: "The bankrupt contracted [date not given] to hold harmless Max Ohringer from any losses that might result on sales of Ohringer's goods made by the bankrupt."

Kaplan, the guarantor, filed a voluntary petition on November 4, 1929, and an involuntary petition was filed on December 26th, against a corporation to which Ohringer had made sales amounting to $2,-541.74, apparently while the guaranty was in effect. The opinion says: "It cannot be contended that the bankrupt's contract to indemnify had ripened or become absolute at the time he filed his petition."

In re Rechtman (D.C.) 11 F.Supp. 347, 348, was a case in which a guaranty of payment was considered. On October 8, 1931, the bankrupt signed an agreement "guaranteeing payment to the Manufacturers Trust Company of the indebtedness of the Audrey Import Company, Inc., and/or Arthur Schoenbrun, under certain terms and conditions." That guaranty gave rise to a lawsuit on the part of the Trust Com-

pany against the bankrupt, which was begun in August of 1932 and terminated in June of 1934 in favor of the Trust Company.

The date of the bankruptcy does not appear from the opinion, and the matter before the court was the bankrupt's assertion that disability payments under an insurance policy, which had begun prior to the date of the execution of the contract of guaranty, were the property of the bankrupt and not of his trustee. That question was decided against the bankrupt and in the course of the opinion the following occurs:

"The date of the agreement, September 8, 1931, was the date of the accrual of the claim of the Manufacturers Trust Company.

"Further, it appeared from the proof of claim of the Manufacturers Trust Company that the guaranty executed by the bankrupt, on September 8, 1930 [1931?], guaranteed payment of all liabilities of Audrey Import Company, Inc., and another, and that from the proof of claim it appears that at the time the guaranty was executed, judgment had already been obtained against Audrey Import Company, Inc.

"The guaranty agreement was a complete obligation of payment, which became absolutely effective on the day of its execution.

"In any event, a creditor holding a guaranty of payment of a debt may file a claim, even though the debt is not due until after bankruptcy. Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028."

The difference between the Rechtman Case and this is that in the former a judgment had been recovered against the principal debtor, which was due and owing when the guaranty of payment was executed, while here there was no default as to the mortgage debt when the guaranty was executed, nor did any arise until after the bankruptcy of these guarantors.

In the language of the opinion in the Merrill & Baker Case, no action could have been maintained on this contract of guaranty on the day of bankruptcy because it would have been premature, with the result that no provable claim then existed.

The question persists, however, as to whether that test can be considered current in the light of Maynard v. Elliott, supra, in which it was equally clear that no action could have been maintained against the endorser on the day of bankruptcy and yet the claim was held to be provable. The apparent result of the comparison of these cases is that, while the Supreme Court still regards the Merrill & Baker decision as sound, the theory upon which it was reached was not applicable to the contract of an endorser of commercial paper, although the respective engagements of the two bankrupts stand "upon the same plane."

■ While the difficulty thus encountered is manifest, it is the duty of this court to decide this controversy in deference to both decisions. This is possible if there is substance to the view that each contract of guaranty must be examined for the possible presence of a contingency depending upon an event sufficiently fortuitous to call into operation the rule of decision of the Merrill & Baker Case.

The same court which decided the latter had held, in In re Philip Semmer Glass Co. (C.C.A.) 135 F. 77, that a bankrupt's liability as endorser which did not become absolute until after bankruptcy was a debt provable in bankruptcy, so that in this Circuit a distinction between the two undertakings must be deemed to have been recognized; if that is true, Maynard v. Elliott, supra, does not change the law which is controlling upon this court.

Turning now to this guaranty, it will be seen to be conditional in terms, and to be subject to avoidance if any of a number of circumstances should arise. The most devitalizing clause seems to be No. 6, which reads: "That should the mortgage become due during a time of panic or when a stringency is apparent in the money or mortgage market, the guarantors shall not be required to liquidate or make payment of the principal, and their guarantee shall be null and void."

This comes close to meaning that the guarantee shall be null and void under nearly the only circumstances which would cause the holder to seek resort to it. That such conditions were present on January 1, 1934, when the mortgage became due, and continued thereafter, can scarcely be open to question in the light of sundry legislative pronouncements, both national and state.

Whatever may be thought of the merits of such a contract, and of the sagacity of those who paid money to get it, the fact remains that it is the contract which the parties made, and their respective rights must be measured accordingly.

The contingency written into the undertaking in the quoted clause is so apparent that the court is constrained to conclude that the undertaking of the bankrupts falls within the decision of the Merrill & Baker Case, and is quite removed from that of the endorser in the Maynard v. Elliott Case, and that the referee's report must be confirmed.

Settle order.