## PINCKNEY et al. v. WYLIE.

### No. 8098.

Circuit Court of Appeals, Fifth Circuit.

Nov. 25, 1936.

W. R. Brown, of Temple, Tex., for appellants.

Edgar Monteith, of Houston, Tex., and W. W. Naman, of Waco, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

This appeal by the receiver of a national bank presents these questions: First,

whether a creditor of the bank having a debt for which the bank is surety, and there being real estate security of the principal debtor, can have ratable dividends from the bank's assets upon the full amount of his debt as it stood at the time the receiver was appointed, or whether the receiver can require that the security be first realized and dividends allowed only on the balance; second, whether a court of the United States can, pending the dispute, enjoin further payments by the receiver to others, especially when he has pending before a state court an application to modify a sale of the bank's assets? There are other assignments of error relating to special demurrers to parts of the appellee's bill, but since special demurrers are abolished by the equity rules and since the record does not disclose any action upon them by the court below, we disregard them.

There is no statement of the evidence, so that the facts are fixed by the admissions of the pleadings and the findings of the court, and are briefly as follows: The appellee Wylie is the holder by assignment of notes for an original aggregate principal of $7,000 for the purchase price of 252 acres of land in Texas, secured by trust deeds on the land having the effect of mortgages and by a retained vendor's lien. Persons not parties to this case originally bought the land and made the notes and deeds, but sold the land to Belton National Bank in liquidation of their indebtedness to it, the bank assuming the purchase money debt of $7,000. The bank then sold the land to one Peteete, who in turn as part of the consideration assumed the purchase money notes. Peteete later renewed two of the notes for $1,000 each with the full knowledge and consent of the bank, each new note bearing this entry: "For value received it hereby guarantees the payment of the within note, principal and interest, at maturity or on demand at any time after maturity, hereby waiving demand, protest and notice of nonpayment thereof. W. W. James, President, The Belton National Bank." The court finds James to be "the president and executive head of the said Bank entrusted by its Board of Directors with the general management and control of all the affairs of the Bank not expressly required by law to be formally passed upon by the Board of Directors." The bank afterwards failed, and a receiver was appointed March 1, 1933. The receiver under court authority made a sale of most of the assets to another bank, enabling him to pay a dividend of 68 per cent. to creditors, but the claim of Wylie was not allowed. Wylie in the United States District Court brought this suit in equity against Peteete, the bank, and its receiver, to establish his right to participate in this dividend, to sell the land and to enjoin further dissipation of the bank's assets until he should be paid. The judge decreed his right to be paid a 68 per cent. dividend on the amount of his debt as of March 1, 1933, a judgment against Peteete for the full amount that he owed to date of judgment, and a sale of the mortgaged land, from the proceeds of which Wylie is to have the remainder of his debt, and if he is not paid thereby the amount due as of March 1, 1933, he is to have further ratable dividends from the bank's assets. If the proceeds of sale are more than sufficient to pay Wylie, the excess is to be brought into court for further order. The receiver is enjoined from making further disposition of assets until the 68 per cent. dividend is paid to Wylie.

In Texas, as generally elsewhere, the purchaser of property incumbered by a mortgage who assumes to pay the mortgage as part of the consideration of his purchase, as between himself and his vendor becomes the principal debtor and the vendor his surety; and the mortgagee may recognize and enforce the transaction for his own benefit. Spann v. Cochran & Ewing, 63 Tex. 240; Hill v. Hoeldtke, 104 Tex. 594, 595, 142 S.W. 871, 40 L.R.A. (N. S.) 672; Key v. Alamo National Co. (Tex. Civ.App.) 62 S.W.(2d) 1002. The mortgage creditor knowing the assumption cannot compound with his new debtor without the consent of the old debtor who now stands as surety except at the risk of discharging the latter. See Insley v. Webb, 122 Wash. 98, 209 P. 1093, 41 A.L.R. 274, and note. Thus the bank here became the principal debtor by assuming the notes and mortgages, but on obtaining the assumption of them by Peteete became as to Peteete a surety. The bank's last position evidently became known to Wylie when the two $1,000 notes fell due, and was recognized and confirmed by the entry which the bank through its president made on the renewal notes given by Peteete to Wylie. These entries are attacked as not authorized and as being indeed ultra vires. Assuming without deciding that a national bank could not guarantee payment of a debt of another in which it had no interest, it here appears that this bank having had

to take land for an indebtedness due to it assumed instead of paying an incumbrance on it, and having become thus bound rather than suffer a foreclosure joined in an arrangement to postpone it which in no way increased its liability. We perceive nothing ultra vires in such an ordinary business arrangement. Touching the authority of the president to agree for the bank, it is true that his position as president would not of itself give him power to make contracts for the bank, but under the court's further finding that he was the executive head of the bank intrusted by the board of directors with its general management and control, his authority was ample. Certainly he could consent for the bank to a renewal of the notes, and what he did accomplished nothing more. To guarantee the payment of a debt at maturity is to become surety for it. In re Adair Realty & Trust Co. (D.C.) 35 F.(2d) 531. The bank was surety already. The original makers of the notes were probably released. They do not appear to have consented to this extension and are not parties to this suit.

When the bank became insolvent Wylie thus held the notes on which Peteete was the principal debtor and the bank was surety, secured by mortgage and vendor's lien on land which now belonged to Peteete as against the bank. From the creditor's standpoint the surety and his principal equally owe the debt and all of it. The surety if solvent may ordinarily be forced at once to pay, and must seek reimbursement thereafter from his principal, the law aiding him by a subrogation to all the liens held by the creditor. By article 6247, Rev. Stats. of Texas, if principal and surety are both sued the issue of suretyship can be raised by the surety and the court shall order a levy first on the principal's property, if to be found; and article 6248 preserves the judgment against the principal though paid by the surety, and authorizes an execution on it in favor of the surety. We doubt that these provisions have any application to a suit in equity in a federal court, but equity will itself go far to exonerate a solvent surety and to prevent his property being sold by compelling the principal to pay and by subjecting first the principal's property, especially that put up as security for the debt. This equity of exoneration was referred to and some of the authorities cited in Glades County v. Detroit Fidelity & Surety Co. (C.C.A.) 57 F.(2d) 449. This doctrine might in this case have required the mortgaged property to be sold and applied before the surety bank is called on to pay in full had the bank remained a going concern, but it is insolvent. All that it has must in any case be sold and administered, as must the mortgaged property. The land under this decree is to be at once sold and its proceeds if sufficient will pay the entire debt either directly to Wylie or by reimbursing the receiver if he has paid Wylie. If the land does not bring enough, all that it brings will go into the same channels. The error assigned on this record is not that the receiver is required to pay subject to reimbursement instead of postponing his payment until after the sale of the land, but is that the receiver is required to pay a pro rata based on Wylie's debt as it stood at the time of the bank's insolvency rather than as it shall stand after crediting the proceeds of the mortgaged property. The former involves an application of the so-called chancery rule and the latter the bankruptcy rule in making dividends from an insolvent estate to a creditor who has security. The history of the two rules is traced, and the reason for the general preference of the chancery rule is stated in Chemical National Bank v. Armstrong (C.C.A.) 59 F. 372, 28 L.R.A. 231; Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640. The chancery rule recognizes that the assets of an insolvent become a trust for the creditors at the date insolvency is declared and that the share of each creditor in it is to be ascertained according to the amount of his debt at that date, adding no interest afterwards and taking no account of later payments from securities or from others bound for the debt, except to see that the creditor receives in the aggregate no more than his full demand. That this rule is to be applied in making the ratable distribution of the assets of a failed National bank which is provided by the National Bank Act, 12 U.S.C.A. § 194, is settled by the cases just cited. It was applied in the decree appealed from. That the Belton Bank is liable as surety does not interfere with the application of the rule. The receiver, however, is of course entitled to all the recourse against the principal debtor, Peteete, and his property that a surety who pays ordinarily would have.

The injunction was properly granted. The receiver had ignored Wylie's

claim and was disposing of the assets in suchwise as the court could find endangered Wylie. He had applied to a state court of record under 12 U.S.C.A. § 192, to sanction the sale of most of the assets, and the sale had been carried out long before Wylie filed suit. The state court was again being asked to modify a provision of the sale which authorized the receiver to take up with cash some of the sold assets which proved bad. But the receiver was not the officer of any court. The state court was acting merely in the special manner authorized by the cited statute, and had no judicial possession of the bank's assets. There was nothing in the principles of comity to prevent a court of the United States from protecting by injunction the trust fund in which its suitor Wylie was claiming an interest. Jackson v. McIntosh (C.C.A.) 12 F.(2d) 676; Hulse v. Argetsinger (C.C.A.) 18 F.(2d) 944. If there had been a proceeding in the state court within the meaning of 28 U.S.C.A. § 379, it was not enjoined. The receiver was not stopped from adjusting his contracts with others, but only from paying out money or disposing of property. There was no offer to sequester sufficient money or to give special bond to pay Wylie's claim if established in lieu of the injunction, so no question of the propriety of such a course is raised.

Judgment affirmed.